**UNITED STATES of America,
Appellee,**

**v.**

**Piero HELICZER, Jack William Martin, III, and Jack V. Smith, Appellants.**

**No. 226, Docket 30587.**

United States Court of Appeals
Second Circuit.

Argued Jan. 16, 1967.

Decided Feb. 23, 1967.

Martin Garbus, New York City, for appellants.

Douglas S. Liebhafsky, Asst. U. S. Atty., Southern Dist. of New York (Robert M. Morgenthau, U. S. Atty., and John R. Bartels, Jr., Asst. U. S. Atty., Southern Dist. of New York, on the brief), for appellee.

Before MEDINA, ANDERSON and FEINBERG, Circuit Judges.

ANDERSON, Circuit Judge.

The appellants, Martin, Heliczer and Smith were found guilty by a jury on a single count indictment for violating Title 18 U.S.C. § 111[1] by assaulting, resisting and interfering with the arrest of Martin by Federal Narcotics Agents Jensen, Feldman, Maher and O'Neill. A co-de-

fendant Nolan was acquitted. Judgments were entered against the three who were convicted; sentences of three months were imposed upon Martin and Smith and the imposition of sentence upon Heliczer was suspended and he was placed on probation for two years. It is from these judgments that they appeal.

The jury could have found that the events leading up to and surrounding the arrest of the defendants-appellants on August 11, 1965 were as follows:

On July 23, 1965 Agent Jensen arrested Martin and one Dale Wilbourne for a violation of the federal narcotics laws. The agent acted in part in reliance upon the report of an informant named Cutler. Martin and Wilbourne were placed in the Federal Detention Headquarters from which Martin was released on July 30 after posting bail. Meanwhile, Martin had learned that Cutler was the informant in the case, and, within a few hours of his release, he accosted Cutler and said, "You are dead, man. I am a friend of Dale's." Cutler reported this to Agents Feldman and Jensen, who two days later interrogated Martin about the incident. The agents testified that Martin admitted that he threatened to kill Cutler but said that he made a mistake in doing so. The agents warned him to stay away from Cutler. Parenthetically it may be said that in his own testimony Martin denied the agents' version of his meeting with Cutler and declared that what he told Cutler was " * * * Dale Wilbourne * * * was really puzzled at what you did to him and he wanted me to tell you that you are just dead as far as this town is concerned," which he interpreted to mean only that Cutler had destroyed his own usefulness as an informant in the area because he had become known. Despite the agents' warn-

1. 18 U.S.C. § 111, in pertinent part, provides:
 " * * * Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties * * * " shall be punished.

The persons sought to be protected by § 111 are those designated in § 1114:
 "Whoever kills * * * any officer or employee * * * of the Bureau of Narcotics * * * while engaged in the performance of his official duties, or on account of the performance of his official duties, shall be punished * * ."

ing, Martin continued to pursue Cutler, and the agents decided to arrest him for the original threat. They had difficulty in locating Martin but knew that he was scheduled to speak at a rally to be held on August 11, 1965 in the auditorium of the Broadway Central Hotel in connection with a showing of "underground" movies to raise money to provide bail for Dale Wilbourne, who still remained at the Detention Headquarters on the pending narcotics charge. At this rally Heliczer was master of ceremonies and Miss Nolan, a co-defendant, was the ticket taker. There were about 200 persons present. Before Martin spoke the four narcotics agents, accompanied by Coleman, who was another federal narcotics agent, and Detective Imp of the Narcotics Bureau of the New York City Police Department, entered the auditorium and took seats. Agent O'Neill was dressed in ordinary civilian business attire; the others were dressed in sport shirts and trousers. After Martin spoke, Agent Feldman went to the rear of the podium where Martin was sitting and ordered Martin to accompany him. Martin then returned to the microphone and told the crowd that he was being arrested. There was evidence that he said he was being arrested by federal agents and that he pointed out three of them, calling them by name. Martin himself testified that he announced that he was being illegally arrested because Feldman did not have a warrant. In any event, other agents then joined Feldman in subduing Martin, who was striking and kicking and seeking to escape from Feldman. Martin was handcuffed and carried from the auditorium. Meanwhile, Martin was calling on the crowd to attack the agents and rescue him. A melee resulted in which the agents were repeatedly kicked, struck and otherwise impeded until they reached the Government car in the street into which they placed Martin and also Heliczer and Nolan, whom they had arrested for assaulting them along the way. Martin, Heliczer and Nolan escaped from the car but were recaptured and again placed in the car. Smith then assaulted Agent Feldman and was arrested and placed in another car by other agents. The mob, however, surrounded the cars so that the agents could not leave with their prisoners until they were rescued by a detail of twenty to thirty New York City policemen.

Martin argues three principal points on his appeal: that his arrest was unlawful, that the agents were not engaged in the performance of their duties when they arrested him, and that the trial judge erroneously instructed the jury that it was irrelevant whether or not a particular defendant knew that the men arresting them were in fact federal agents.

The last of these three points is not actually in issue in Martin's case because he made a judicial admission that he knew who the agents arresting him were and that they were Federal Narcotics Agents.

■■■ With regard to the validity of the arrest, no claim is made by the Government that the agents had the power to make the arrest without a warrant pursuant to federal statute Title 26 U.S.C. § 7607 because that statute limits their authority to arrest to violations of the narcotics laws. The power to make the arrest here called into question derives from the New York State Code of Criminal Procedure, Chapter V § 183 [2] which

---

2. New York Code of Criminal Procedure, § 183(2) states:
"A private person may arrest another * * * [w]hen the person arrested has committed a felony * * *."
The New York provision for arrests by peace officers, New York Code of Criminal Procedure § 177, does not apply because Federal Narcotics Agents are not "peace officers" within the meaning of that Statute. United States v. Viale, 312 F.2d 595 (2 Cir.), cert. denied, 373 U.S. 903, 83 S.Ct. 1291, 10 L.Ed.2d 199 (1963).
As used in the present opinion, however, the words "peace officer" are not used in the narrow statutory sense but, as used in the common law, as an officer of the Government authorized to make arrests for a breach of the criminal law.
26 U.S.C. § 7607 empowers Federal Narcotics Agents to arrest without a warrant for violations of "any law of the

authorizes a private person to arrest one who has committed a felony. The trial judge properly left it to the jury to find whether or not Martin's felonious act of threatening Cutler with death actually took place. The proof in support of this rested upon Agent Jensen's testimony about Cutler's report to him that Martin had threatened him in that manner and upon Martin's own admissions to Agents Jensen and Feldman that he had done so. The court left it to the jury to determine whether or not Martin said what the agents in testifying about the admission reported that he said and whether it constituted a threat to Cutler. The charge was proper in this respect; and, although Martin now raises an objection to it, he took no exception to that part of the charge at the trial and there is no reason to consider it for the first time on appeal.

 Appellant's argument that the agents were not "engaged in * * * the performance of [their] duties" is closely allied to the point already mentioned concerning the unlawfulness of the arrest. It is his claim that if the arrest was unlawful, the agents were not engaged in performing their official duties, and Martin had a right to resist. Defense counsel excepted to the court's charge on this essential element of an offense under § 111 without giving any reason for doing so, as required by Rule 30 F.R.Crim.P., and therefore it cannot be assigned as error. It is apparent, however, that the appellant assumes that the scope of the agents' official duties is co-extensive with their power to arrest. But this is not so. Their official duties may cover many functions which have nothing whatever to do with making arrests. It is true that from time to time in appropriate circumstances they may have a duty to make an arrest, but their power to make it is not a natural incident derived from the catalogue of

their duties but must be separately granted by the act of a sovereign. Moreover, the sovereign granting it may be a different one from that which prescribes their duties, as in the present case. "Engaged in * * * performance of official duties" is simply acting within the scope of what the agent is employed to do. The test is whether the agent is acting within that compass or is engaging in a personal frolic of his own. It cannot be said that an agent who has made an arrest loses his official capacity if the arrest is subsequently adjudged to be unlawful. An analogous claim as made in United States v. Montanaro, 362 F.2d 527, 528 (2 Cir. 1966) and was rejected by this court.

The charge of the court on this element of the offense was as follows:

> "The Government must also prove beyond a reasonable doubt other elements as to each defendant. They must prove beyond a reasonable doubt that * * * the agents of the Federal Bureau of Narcotics were engaged in the performance of their official duties.
>
> It is not disputed here that these men, these agents, at the time of the offense were agents and employees of the Federal Bureau of Narcotics.
>
> It is further undisputed that at the time of the arrests these men were attempting to arrest, and eventually did arrest, the defendant Jack William Martin. If you find that the defendant Martin had prior to August 11, 1965 threatened the Government informant and that the agents were effecting Martin's arrest for having made such a threat, then I charge you that these agents were then and there performing their official duty."

This portion of the charge is actually too favorable to the defendants because it went a long way toward equating the

United States relating to narcotic drugs * * * or marihuana * * *." Apparently the Government conceded that § 7607 was not applicable to an arrest for threatening a Government witness in violation of 18 U.S.C. § 1503, even though

that witness was a narcotics informant. Consequently, the legality of Martin's arrest turned on state law. United States v. DiRe, 332 U.S. 581, 68 S.Ct. 222, 92 L. Ed. 210 (1948).

area of official duty with the boundaries within which an arrest could lawfully be made. It plainly instructed the jury that if they found that Martin had committed the felony of threatening a Government informant and the agents were in the process of arresting Martin for that felony, they would be performing their official duty. In other words, the court in effect said it is of this that "performance of official duty" consists for the purpose of this case. Consequently, in the event that the jury found that the Government had not proved beyond a reasonable doubt that Martin had committed the felony, the essential element of engaging in the performance of their official duties would not have been proven and the jury would have acquitted him. The jury, however, returned a verdict of guilty and in so doing found that Martin had committed the felony of threatening the Government informant.

The arrest, as previously stated, was one made under the authority of the New York statute which makes lawful an arrest of another by a private person "[w]hen the person arrested has committed a felony." As the jury found that Martin had committed a felony, his arrest was lawful. Except for the trial court's mistake in giving an instruction too favorable to the defendant, the finding that the arrest was lawful could not have been clearly ascertained because, after the trial court charged on the matter of what circumstances would have called for a finding that the arrest was illegal and the right of Martin to resist such an illegal arrest,[3] the court erroneously charged that once Martin was actually arrested, he would not then be justified in continuing his resistance.[4] Conse-

---

3. In John Bad Elk, 177 U.S. 529, 20 S.Ct. 729, 44 L.Ed. 874 (1900), the Supreme Court held that there is a right to resist an unlawful arrest. See also United States v. DiRe, 332 U.S. 581, 594, 68 S.Ct. 222, 92 L.Ed. 210 (1948). Although this court cited the *John Bad Elk* case in United States v. Angelet, 231 F.2d 190 (2 Cir.1956), cert. denied 351 U.S. 952, 76 S.Ct. 849, 100 L.Ed. 1476 (1956), there is growing authority that its vitality is waning.

In recent years the right to resist an illegal arrest has been severely criticized and rejected by many persuasive authorities. Section 5 of the Uniform Arrest Act abrogates the right to resist whenever "a person has reasonable ground to believe that he is being arrested by a peace officer * * * regardless of whether or not there is a legal basis for the arrest." See Warner, The Uniform Arrest Act, 28 U.Va.L.Rev. 315, 330–331 (1942). Section 304(2) (a) (i) of the Model Penal Code, adopted by the American Law Institute in 1958, denies the right "to resist an arrest which the actor knows is being made by a peace officer, although the arrest is unlawful." See statement by Prof. Herbert Wechsler, Chief Reporter for the Model Penal Code, 1958 Proceedings, p. 247. Also, The Right to Resist an Unlawful Arrest: An Outdated Concept, 3 Tulsa L.J. 40 (1966).

The right to resist an illegal arrest has been abolished by the legislatures of Rhode Island, New Hampshire, Delaware and California. R.I.Gen.Laws Ann. § 12–

7–10 (1956); N.H.Rev.Stat.Ann. 594:5 (1955); Del.Code Ann.Tit. 11, § 1905 (1953); Cal.Penal Code § 834a (Supp. 1966). It has been eliminated by judicial decision in New Jersey. State v. Koonce, 89 N.J.Super. 169, 214 A.2d 428 (1965). There is presently pending in the New York State Legislature, Senate Bill No. 642 to amend the Code of Criminal Procedure by inserting a new section, designated § 177–a, to provide that the use of force is not justifiable to resist an arrest when the person being arrested knows that the one making the arrest is a police officer, even though the arrest is unlawful.

There is, therefore, a present trend toward holding that the legality of an arrest—which is often a close question—should be decided by a court of law without the preliminary trial by battle in the streets. As Judge L. Hand said,

"The idea that you may resist peaceful arrest * * * because you are in debate about whether it is lawful or not, instead of going to the authorities which can determine, * * * [is] not a blow for liberty but, on the contrary, a blow for attempted anarchy." 1958 Proceedings, American Law Institute, p. 254.

4. This portion of the court's instructions reflects to some degree a request to charge made by the Government based upon People v. McNeil, 21 A.D.2d 1, 247 N.Y.S.2d 734 (1964) which said, " * * * an illegal arrest may properly be resisted but it does not clothe the one wrongfully detained with the right to continue indefi-

quently, it would not have been clear whether the verdict of guilty was based upon proof beyond a reasonable doubt of all of the elements of the offense or upon Martin's continued resistance after he was actually taken into custody during his resistance to an unlawful arrest. It is apparent, however, that the jury never had occasion to reach the latter alternative. None of the claims made by Martin point to reversible error and his conviction is affirmed.

As the happenings preceding and attending Martin's arrest were taking place, another series of events occurred which led to the arrest of Heliczer and his subsequent conviction, from which he has appealed. The facts which the jury could have found were as follows:

After Heliczer, as master of ceremonies, had opened the meeting and while Martin was speaking, he left the platform and went to various parts of the assembly room. At the end of Martin's speech, he returned to the platform and was there when Feldman attempted to arrest Martin and when Martin addressed the crowd again through the microphone to protest his arrest. After Martin had been handcuffed and was being conducted from the room by Agents Maher, Feldman and Jensen, his co-defendant Nolan, then in the assembly room, was observing what was taking place. She became convinced that the agents, in taking Martin out while he was continuously resisting, were causing Martin some bodily pain and she asked them to stop hurting him. When she thought that they had not done so, she struck Agent Maher in the face. This was observed by Agents O'Neill and Coleman, and O'Neill placed her under arrest. Heliczer then, approaching Agent O'Neill from the rear, kicked or attempted to kick him in the back. Agent Coleman, who observed this assault, arrested Heliczer, conducted him outside and placed him in the Government car with Nolan and Martin. All three escaped but were recaptured and returned to the car. Heliczer, in his own testimony, indicated that his sole motivation in assaulting Agent O'Neill was that he knew that Nolan had just returned from the hospital and might get hurt. The court and Government and defense counsel, however, treated Heliczer's activities as an interference with Martin's arrest.

It is Heliczer's contention that he did not know that the men arresting him were peace officers; he also claims that the arrest of Martin was unlawful, that the agents at the time were not engaged in the performance of their duties and that under these circumstances he had the right as a bystander to assist Martin in resisting arrest.

As stated in discussing Martin's case, there was no reversible error committed by the trial court in its charge to the jury with regard to the agents' arrest of Martin and the issue of whether or not the agents were engaged in the performance of their duties. The jury found that they were so acting and that the arrest was lawful. Heliczer argues, however, that the trial judge erroneously instructed the jury that scienter, i. e., knowledge that the men making the arrest were federal agents, was not a necessary element of the crime. While technically no exception was taken to this portion of the court's charge, defense counsel had argued the point in connection with his requests to charge and at that time he was assured by the court that he had an exception with regard to any of the requests refused.

nitely an assaultive course of conduct." As authority for this the Appellate Division quoted that part of the opinion of the New York State Court of Appeals in People v. Cherry, 307 N.Y. 308, 121 N.E.2d 238 (1954) which said, "that the victim may not pursue his counterattack merely for the sake of revenge or the infliction of needless injury."

The words quoted from these opinions are simply ways of describing force that goes beyond proper resistance, i.e., the use of reasonable force only, and the motivations accompanying such employment of excessive counteraction. They do not stand for the proposition that once a victim of unlawful arrest has been subdued he may not thereafter attempt to use reasonable force to escape his captors.

In the cases of United States v. Lombardozzi, 335 F.2d 414, 10 A.L.R.3d 826 (2 Cir.), cert. denied 379 U.S. 914, 85 S.Ct. 261, 13 L.Ed.2d 185 (1964), and United States v. Montanaro, 362 F.2d 527 (2 Cir. 1966), this court held that knowledge that the one interfered with was a federal agent is not an essential element of an offense under 18 U.S.C. § 111, which the Government must prove. In *Lombardozzi* five men grievously assaulted an F.B.I. agent in front of a church where the funeral was being held of one who in his lifetime had been associated with those in criminal activities. The agent was arresting no one and was merely taking observations in the course of his official duties. The appellants argued that they could not be convicted for the unprovoked attack because they did not know the victim was an F.B.I. agent.

The same argument was advanced in *Montanaro,* the significant facts of which were that the appellant had been trapped in a road block set up by federal agents who had a warrant for his arrest. Appellant ran his car into an agent and severely injured him in an effort to prevent the arrest. The court brushed the argument aside and applied the principle enunciated in *Lombardozzi.*

 Cases of this sort involving the making of an arrest differ from those like *Lombardozzi* in which no arrest was being made, because in certain arrest circumstances the holding in *Lombardozzi* comes into collision with the right of self-defense. As the law now stands (1) a person being arrested has the right to resist with reasonable force an unlawful arrest by a private citizen or a peace officer and (2) one who has no actual knowledge that he is being arrested and the circumstances are such as to afford him no reasonable ground to suppose that he is being arrested and

he has no fair opportunity to inquire or otherwise ascertain why another is taking or attempting to take him into custody and the situation in which he finds himself is such as to cause him reasonably to believe that he is being subject to a hostile attack against his person, has a right to use reasonable force to defend himself. If, in either of these two sets of circumstances, the arrest was being made by a federal agent engaged in the performance of his official duties, it is probable that a modification or limitation would be placed on the reach of the interpretation and application of the *Lombardozzi* holding as extended to arrest cases. See also Bennett v. United States, 285 F.2d 567 (5 Cir. 1960), cert. denied 366 U.S. 911, 81 S.Ct. 1087, 6 L.Ed.2d 236 (1961); Arwood v. United States, 134 F.2d 1007 (6 Cir.), cert. denied 319 U.S. 776, 63 S.Ct. 1436, 87 L.Ed. 1722 (1943).

In United States v. Wallace, 368 F.2d 537 (4 Cir. 1966), which involved the review of the conviction of one who had assaulted a revenue agent with a club, the court adopted the construction of the statutes, §§ 111 and 1114, placed upon them in *Bennett, Lombardozzi* and *Montanaro* but said at 538, " * * * the statute does not proscribe reasonable force employed in a justifiable belief that it is exerted in self-defense."

 A bystander, such as Heliczer, has no right to intervene if there is reason for him to be aware that the arrest is being made by a peace officer or that the arrest is lawful. Also, as a general rule, he has no right to intervene if in fact a lawful arrest is being made by a federal agent, whether the bystander knows it or not, because, like the person being arrested, he is subject to the holdings in *Lombardozzi* and *Montanaro* and to a great degree takes a chance in assisting another to resist arrest.[5] Moreover, the force which he

5. See People v. Young, 11 N.Y.2d 274, 229 N.Y.S.2d 1, 183 N.E.2d 319 (1962), in which a bystander acting under a mistake of fact was convicted of third degree assault when it turned out that he had interfered with a lawful arrest. The court

took a position similar to that of this court in *Montanaro.* It did not discuss defendant's failure to make inquiry of anyone nor did the facts present a situation where the person being arrested was resisting an unlawful arrest, or was labor-

adds to that exerted by the person sought to be arrested cannot together amount to more than reasonable force. In any event, before intervening he must make a reasonable effort to inquire into the nature and purpose of the attempted arrest and the authority of the one making it, unless circumstances make such inquiry impossible or fruitless. As in the case of a person being arrested, the circumstances may reasonably appear to the bystander to be nothing but a private assault and in no respect an official arrest and the situation so grave and extreme, involving risk of death or serious bodily harm, that swift action with no pause for inquiry was demanded. In such a case intervention may well be held not to be a violation of the statute. The trial court's failure to instruct the jury on such extreme circumstances was not error because there was no evidence whatever with respect to any of these appellants to call for such a charge. Heliczer had ample opportunity to advise Agent O'Neill or Coleman of the fact that Miss Nolan had just returned from the hospital. If he had been genuinely concerned about her safety, he would have done so. Instead, he tried to kick Agent O'Neill in the back, which was hardly calculated to remove Miss Nolan from any danger she may have appeared to be in. He could have inquired about the arrest of Martin but did not do so.

There is no merit to Heliczer's claims on appeal, and the judgment of conviction is affirmed.

Appellant Jack V. Smith, also a bystander, makes the same points on appeal as those presented by Heliczer. The facts of Smith's case, however, clearly demonstrate that he has no ground whatever for making them because the same principles of law apply in his case.

The jury was warranted in finding that when Agent Jensen was putting or had put Martin in the Government's car, Agent Feldman, standing nearby, was approached by a stranger, who identified himself as an attorney and whom the agent described as "a very nice gentleman." He asked Feldman what the fracas was about. As the agent was telling him, Smith came up behind Feldman and struck him a severe blow on the back of his head, knocking him to the ground, unconscious. Other agents arrested Smith, and, after the arrival of the squad of City policemen, he was taken to a New York City police station. There he assaulted Detective Imp by striking him in the side.

 It is uncontradicted that Feldman, at the time he was assaulted by Smith, had no immediate or direct physical custody of Martin; he was not in the act of arresting anyone or attempting to restrain or subdue Smith and there was ample opportunity for Smith to make a reasonable inquiry of Feldman as to whether he was a peace officer engaged in the performance of his duties, or at least ask why they were taking Martin into custody. Moreover, it is uncontradicted that Smith assaulted Detective Imp in the police station, and Smith was certainly aware by that time that he was resisting arrest by peace officers. While Detective Imp was not a federal officer, he was acting in cooperation with and in aid of the federal officers and his custody of Smith was on behalf of the United States and was a part of the carrying out of the duties of the federal agents; therefore Smith's assault on Imp constituted a resistance to federal arrest. United States v. Chunn, 347 F.2d 717, 721 (4 Cir. 1965).

The judgment of conviction against Smith is affirmed.

ing under a mistake of fact in circumstances so extreme as to involve risk of his death or great bodily injury. For a

critical discussion of the case see 63 Columbia Law Review 160.