EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* EDWIN FELICIANO GRAFALS, acusado y apelante.

*Número:* CR-71-64 · *Resuelto:* 21 de abril de 1972

*Alberto L. Márquez,* abogado del acusado; *Gilberto Gierbolini, Procurador General,* y *Augusto A. Cirino, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: El apelante fue convicto de una infracción al Art. 137 del Código Penal, 33 L.P.R.A. sec. 495, [1] en juicio *de novo* celebrado ante el Tribunal Superior, Sala de Aguadilla. Fue sentenciado a cumplir dos meses de cárcel y $100.00 de multa. En esta apelación señala como errores el haberse declarado sin lugar sus planteamientos de que la denuncia no imputa hechos constitutivos de un delito. Señala, además, que la prueba de cargo es insuficiente para condenar, cuestión que suscitó y le fue resuelta adversamente por el tribunal de instancia.

En cuanto a la denuncia argumenta que no se alega expresamente que el acusado sabía o tenía conocimiento que el policía estaba actuando en gestiones propias de su cargo ni tampoco los actos específicos constitutivos de "interrupción, demora o estorbo de la justicia."

No tiene razón. La denuncia contiene las alegaciones propias de una infracción al Art. 137 del Código Penal. En ella se alegó que el 7 de octubre de 1969, a las 10:25 a.m. en Aguadilla, Puerto Rico:

"El referido acusado, Edwin Feliciano Grafals, allí y entonces de manera ilegal, voluntaria y maliciosamente, violó lo dispuesto en el Artículo 137, del Código Penal de P.R., consistente en que en la hora, fecha y sitio arriba indicado, mientras el aquí denunciante trataba de arrestar a su hermano Harry Feliciano Grafals,

---

[1] Dice el referido artículo:

"Toda persona que voluntariamente resistiere, demorare o estorbare a cualquier funcionario público en el cumplimiento de alguna de las obligaciones de su cargo, o al tratar de cumplirla, siempre que no hubiere otra pena señalada, incurrirá en multa máxima de cinco mil (5000) dólares y cárcel por un término máximo de un año."

por una alteración a la paz pública, el aquí acusado demoró y estorbó al referido agente que es un funcionario público en el desempeño de sus deberes oficiales, al interponerse en el medio y decirle a su hermano que se metiera para la residencia y no se dejara arrestar y que no le dijera el nombre. Que el acusado conoce el aquí denunciante como agente del orden público en la Policía de Puerto Rico. Que al tratar de efectuar el arresto que no se logró yo estaba en el desempeño de mis deberes oficiales.''

■ La denuncia describe los actos del apelante al intervenir en el arresto de su hermano. Las alegaciones de que demoró y estorbó al agente denunciante en el desempeño de sus deberes oficiales al interponerse en el medio y decirle a su hermano que se metiera para la residencia y no se dejara arrestar y que no dijera el nombre, precedidas de la alegación de que ''allí y entonces [actuó] ilegal, voluntaria y maliciosamente'' constituyen una exposición de los hechos esenciales del delito, le informaron al acusado de que se le imputaba la comisión del delito de modo voluntario y no inadvertido de los deberes públicos del agente, colocándolo en posición de defenderse. Eso es lo que se exige. Regla 35 de Procedimiento Criminal. *Pueblo* v. *Ayuso*, 25 D.P.R. 391 (1917).

■ En California, de donde proviene el Art. 137 de nuestro Código Penal, se ha sostenido que el elemento de conocimiento por parte del acusado del cargo o deber del funcionario no es un requisito del delito bajo la Sec. 148 del Código Penal de dicho estado equivalente al nuestro. *People* v. *Scrivens*, 81 Cal. Rptr. 86, 89 (Court of Appeals, 2nd District, 1969). En la esfera federal, la regla en la mayoría de los circuitos en torno a un delito federal similar (18 U.S.C. 111) es que no se requiere el conocimiento de que se trata de un funcionario público cumpliendo funciones de su cargo. *United States* v. *Heliczar*, 373 F.2d 241, 247–249 (2d Cir., 1967); *United States* v. *Wallace*, 368 F.2d 537 (4th Cir. 1966); *Bennett* v. *United States*, 285 F.2d 567 (5th Cir.), *cert. den.* 366 U.S. 911 (1961); *United States* v. *Ganter*, 436 F.2d 364 (7th Cir.

1970); *United States* v. *Kartman*, 417 F.2d 893 (9th Cir. 1969). En el caso *Heliczar*, supra, el Tribunal del Segundo Circuito señala que un espectador (*bystander*) que presencia un arresto, si interviene, se toma el riesgo de que el arresto sea completamente legal, y tiene el deber de averiguar primero qué autoridad puede haber para hacerlo. Podría haber circunstancias extremas, reconoce el tribunal, que justifiquen la intervención del espectador, pero a falta de prueba sobre las mismas, no es preciso tener en cuenta dicha posibilidad al instruir al jurado. Véanse *Scienter as element of offense of assaulting, resisting, or impeding federal officer* (18 U.S.C. 111), 10 A.L.R.3d 833; 3 Wharton, *Criminal Law and Procedure*, 632–635.

En su segundo señalamiento de error el apelante señala que la prueba del Pueblo fue insuficiente para condenar. La prueba consistió únicamente de los testimonios del policía denunciante y del apelante. El policía declaró que viajaba en un vehículo no rotulado por la calle Mercado de Aguadilla en dirección al Cuartel. Vestía de civil (T.E. pág. 8). En el trayecto vio a un individuo, que resultó ser el hermano del apelante, dando voces y usando frases obscenas en la acera de la calle. El agente se detuvo, se apeó del vehículo, le informó al sujeto que era policía, que se detuviera porque quería hablar con él. (T.E. pág. 8.) A esto el sujeto le contestó "¿Usted es guardia? Cójame si puede." y salió corriendo hacia una casa de altos y bajos. Allí lo alcanzó, trató de detenerlo para llevarlo al cuartel, porque él trataba de coger un instrumento para darle. Luego de un forcejeo, el policía logró agarrarlo por el hombro. Entonces apareció el apelante y le preguntó que qué le pasaba con su hermano. (T.E. pág. 10.) El denunciante le contestó que era policía y que llevaba a su hermano arrestado. (T.E. pág. 13.) El policía declaró:

"R. Yo le informé que yo detenía, arrestaba al hermano de él por una alteración a la paz y lo llevaba para el Cuartel, a lo que entonces se me interpuso entre los dos.

P. Adelante.

R. Diciendo que yo no iba a arrestar a su hermano y le decía a su hermano que se subiera para arriba para los altos, que yo estaba violando sus derechos al penetrar una propiedad, en su propiedad.

P. ¿Qué sucedió luego?

R. El hermano salió corriendo y se fue hacia una esquina, entonces yo le dije que me entregara a su hermano y me salí a la acera. Ahí me dijo que no iba a dar nombre ni tampoco me iba a llevar a su hermano.

P. ¿El le dijo que no le iba a dar el nombre?

R. El nombre de él ni el de su hermano.

P. Adelante.

R. Entonces, yo me fui a un negocio del frente a preguntar el nombre de él y el señor del frente estaba un poco nervioso, no quiso dármelo, entonces más abajo logré averiguar que ellos eran los hermanos Feliciano Grafals.

P. Siga.

R. Entonces, le dije a él que estaba citado para el cuartel de la Policía al otro día.

. . . . . . . .

R. A los dos, que estaban citados para la Corte de Distrito para el otro día a las nueve de la mañana." (T.E. págs. 10–11.)

El apelante en su testimonio presentó una versión más bien tendente a demostrar una agresión contra su hermano, una actitud belicosa por parte del denunciante y que éste no se identificó como agente de la Policía. (T.E. págs. 32–34.)

En cuanto al arresto, el policía declaró que no lo llevó a cabo porque "ellos se metieron dentro de la casa y no querían salir hacia afuera." (T.E. pág. 27.)

Dando crédito a la prueba presentada, como evidentemente le mereció al tribunal sentenciador, ésta es suficiente en cuanto a todos los elementos esenciales del delito. La intervención y oposición del apelante fueron actos de resistencia que interfirieron efectivamente con las funciones oficiales del agente, frustrando el arresto del hermano del apelante como

resultado de esa conducta. *Pueblo* v. *Aponte Soto,* 99 D.P.R. 185 (1970).

*Se confirmará la sentencia apelada.*

El Juez Presidente, Señor Negrón Fernández, no intervino.