2007 UT App 254

**SALT LAKE CITY, Plaintiff
and Appellee,**

v.

**Paul N. CHRISTENSEN, Defendant
and Appellant.**

**No. 20060006–CA.**

Court of Appeals of Utah.

July 27, 2007.

Jennifer K. Gowans, Provo, for Appellant.

Edward A. Berkovich and Simarjit S. Gill, Salt Lake City, for Appellee.

Before BENCH, P.J., ORME, and THORNE, JJ.

## OPINION

ORME, Judge:

¶ 1 Defendant Paul N. Christensen appeals his convictions of assault on a peace officer, a class A misdemeanor, *see* Utah Code Ann. § 76–5–102.4(1) (2003), and disorderly conduct, a class C misdemeanor, *see id.* § 76–9–102(1), (3). We affirm.

## BACKGROUND

¶ 2 At around 2:00 a.m. on July 23, 2003, Defendant arrived at LDS Hospital seeking treatment for injuries he sustained during an altercation with his brother. In the course of the fight, Defendant's brother had severed a large portion of one of Defendant's fingers with an exacto knife and "drenched him with mace."

¶ 3 Officer Thomas Vu, a Salt Lake City Police Department SWAT officer, was also employed by Intermountain Health Care (IHC) as a part-time security guard for LDS Hospital's emergency room. In his capacity as an IHC security guard, Officer Vu was responsible for assessing the needs of those entering the emergency room and calming distressed or agitated patients before allowing them to be seen by emergency room personnel. Although IHC paid Officer Vu for his part-time security work, while working for IHC he wore a Salt Lake City Police uniform and also monitored the Salt Lake City Police dispatch radio. Officer Vu was working in the emergency room as a security guard during the early morning hours of July 23, 2003. Shortly before Defendant arrived at the hospital, Officer Vu heard on his police radio that a man had been involved in a domestic violence incident, had lost a finger, and had been sprayed with mace. Officer Vu subsequently notified the hospital staff that the individual may be coming to the emergency room for treatment.

¶ 4 When Defendant arrived at the emergency room, he was belligerent, loud, and rude. Officer Vu approached Defendant and asked if he needed to be seen, to which Defendant replied with an obscenity. When Officer Vu informed Defendant that he would need to calm down before he could receive treatment, Defendant again responded with an obscenity. For the next fifteen to twenty minutes, Defendant's obscene outbursts continued, most of which were directed at Officer Vu. Defendant also twice stated that when he was released from the hospital, he planned to kill his brother. Due to Defendant's large size, belligerent behavior, and the fact that he was a suspect in a domestic violence incident, Officer Vu requested police back-up.

¶ 5 Officer Vu also requested assistance from the charge nurse, Alan Rigdon. When Rigdon attempted to assess Defendant, Defendant "took a defensive stance," clenched his fists, and cursed at Rigdon. Defendant then made threatening movements toward Officer Vu and Rigdon and threatened them with violence. At this point in the exchange, Officer Vu decided to take control of Defendant to prevent him from striking Rigdon or himself. When Officer Vu grabbed Defendant's injured left arm, Defendant swung at him with his right arm. He failed to make contact, and Officer Vu, with the help of Rigdon, took Defendant to the ground. Defendant continued to swing and kick at Rigdon and Officer Vu as they attempted to subdue him. With the assistance of three hospital employees, Officer Vu was finally able to handcuff Defendant while Defendant continued to curse and make threats. Once police back-up arrived, Defendant was removed from the emergency room until he was sufficiently calmed down. After finally agreeing to take a sedative, he was then treated for his injuries.

¶ 6 Defendant was subsequently charged with one count of assault against a health care provider, *see* Utah Code Ann. § 76–5–

102.7 (2003), one count of assault against a peace officer, *see id.* § 76–5–102.4, and one count of disorderly conduct, *see id.* § 76–9–102. A jury convicted Defendant of assault against a peace officer and disorderly conduct, but acquitted Defendant of assaulting a health care provider. In ruling on Defendant's motion for a directed verdict on the assault against a peace officer charge, which the trial court denied, the trial court reasoned that because Officer Vu was in uniform and had an ongoing duty to perform peace officer functions, the jury could find that, at the time of the assault, he was "acting within the scope of his authority" within the meaning of the statute. *Id.* § 76–5–102.4(1). The jury did indeed so find, and this appeal followed.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 7 Defendant raises three issues on appeal. Defendant first contends that the trial court erred in denying his motion for a directed verdict. Specifically, Defendant argues that there was insufficient evidence for the jury to conclude that Officer Vu was acting within the scope of his authority as a peace officer and that the trial court misinterpreted section 76–5–102.4 by applying the wrong legal standard in handling the scope of authority issue. "When a party challenges a trial court's denial of a motion for directed verdict ... on the basis of insufficiency of the evidence, ... [w]e reverse only if, viewing the evidence in the light most favorable to the prevailing party, we conclude that the evidence is insufficient to support the verdict." *Brewer v. Denver & Rio Grande W. R.R.,* 2001 UT 77, ¶ 33, 31 P.3d 557 (citation and internal quotation marks omitted). The argument that the trial court misinterpreted the statute presents a question of law, which we review for correctness. *See Carter v. University of Utah Med. Ctr.,* 2006 UT 78, ¶ 8, 150 P.3d 467.

■ ¶ 8 Defendant next contends that the prosecutor committed misconduct because he misstated the law during closing argument, and that the trial court committed plain error when it failed to correct the prosecutor's misconduct. Because Defendant did not object when the statements were made, we

review only for plain error. *See State v. Waldron,* 2002 UT App 175, ¶ 11, 51 P.3d 21.

■ ¶ 9 Finally, Defendant argues that his trial counsel rendered ineffective assistance in failing to raise a mental illness defense and in failing to object to the prosecutor's purported misstatements of law. When, as here, new counsel represents Defendant on appeal, and the record is adequate to review a claim of ineffective assistance of counsel, we review that claim as a matter of law. *See State v. Maestas,* 1999 UT 32, ¶ 20, 984 P.2d 376.

## ANALYSIS

### I. Scope of Authority

■ ¶ 10 Defendant argues that the trial court erred in denying his motion for a directed verdict. Defendant contends that the trial court applied the wrong legal standard when considering the scope of authority issue under Utah Code section 76–5–102.4(1) and that there was insufficient evidence for the jury to properly find that Officer Vu was acting within the scope of his authority as a peace officer for purposes of that section. We discuss each of these arguments in turn.

■ ¶ 11 We disagree with Defendant's contention that the trial court misconstrued section 76–5–102.4. When presented with questions of statutory interpretation, "[t]he plain language of the statute provides us with the road map to the statute's meaning, helping to clarify the intent and purpose behind its enactment." *State v. Maestas,* 2002 UT 123, ¶ 52, 63 P.3d 621. Utah Code section 76–5–102.4(1) states:

Any person who assaults a peace officer, with knowledge that he is a peace officer, and when the peace officer is acting within the scope of his authority as a peace officer, is guilty of a class A misdemeanor.

Utah Code Ann. § 76–5–102.4(1) (2003). As to the first two requirements, the language is clear: to fall within the purview of the statute, an individual must assault a peace officer with knowledge that the person is a peace officer. The commission of an assault is not disputed in this case, and Defendant clearly knew that Officer Vu was a peace officer

**500**

because Vu was in uniform and Defendant repeatedly called him a "cop" while cursing at him. Defendant's conduct, therefore, satisfied the first two elements of the statute.

¶ 12 The third element of the statute, whether or not Officer Vu was "acting within the scope of his authority as a peace officer," *id.*, is less obvious. Defendant argues that the trial court should have looked only at "whether an officer is doing what he or she was employed to do or is 'engaging in a personal frolic of his [or her] own.'" *State v. Gardiner,* 814 P.2d 568, 574 (Utah 1991) (quoting *United States v. Heliczer,* 373 F.2d 241, 245 (2d Cir.1967)) (alteration in original). Defendant argues that Officer Vu's private employment as an IHC security guard constituted a "personal frolic" and, therefore, that he was not acting within the scope of his authority as a peace officer at the time of the assault.

■■■ ¶ 13 We disagree with Defendant's assessment.[1] We conclude that even though Officer Vu was employed as a part-time IHC security guard and no formal arrest was

made until later, Officer Vu acted within the scope of his authority as a peace officer at the time Defendant assaulted him. We also conclude that there is a strong presumption—although no automatic rule[2]—that if an individual strikes a uniformed officer, there will be responsibility pursuant to section 76–5–102.4 for assaulting a peace officer.[3]

■■■ ¶ 14 It is true that upon Defendant's arrival at the emergency room, Officer Vu was acting as an IHC employee and not as a peace officer. But when Defendant took a defensive stance, clenched his fists, and made verbal threats of physical violence, Officer Vu's primary role shifted from that of a security guard to that of a peace officer. It was in his law enforcement capacity that Officer Vu took Defendant under control and prevented the escalation of further violence. As the Illinois Court of Appeals aptly stated,

[t]he nature of a policeman's job is that he be fit and armed at all times, whether on or off duty, and subject to respond to any call to enforce the laws and preserve the

1. In *State v. Gardiner,* 814 P.2d 568 (Utah 1991), a law enforcement officer, responding to an anonymous report of underage drinking at a party, attempted to enter the building in which Gardiner and his friends were located. *See id.* at 569. Upon learning that the officer did not have a search warrant, Gardiner informed the officer that he could not enter the premises and physically blocked him from entering. *See id.* The officer pushed Gardiner, and Gardiner punched the officer in the face. *See id.* Gardiner was later charged with, among other crimes, assaulting a peace officer. *See id.* He appealed his conviction for assault on a peace officer on the ground that the officer was not acting within the scope of his authority because he conducted what was later determined to be an unlawful search. *See id.* at 569, 571. In concluding that the officer had, in fact, acted within the scope of his authority under section 76–5–102.4, the Utah Supreme Court focused on "whether an officer is doing what he or she was employed to do or is 'engaging in a personal frolic of his [or her] own.'" *Id.* at 574–75 (quoting *United States v. Heliczer,* 373 F.2d 241, 245 (2d Cir.1967)) (alteration in original).

Gardiner appealed his conviction by specifically arguing that he had a "common law right to forcibly resist an illegal arrest." *Id.* at 569. Stated another way, the issue in *Gardiner* was whether the "scope of authority" language contained in section 76–5–102.4 provided Gardiner a defense that was "equivalent to the common law defense" of resisting an illegal arrest. *Id.* at

574. Therefore, the issue in *Gardiner* was much narrower than the issue presented here—i.e., whether Officer Vu acted within the scope of his authority when he was engaged in secondary employment as a security guard.

2. At oral argument, both Defendant and the City proposed bright-line rules that should govern situations like the instant case. Defendant argued that in order to conclude that a peace officer is acting within the scope of his or her authority, some formal law enforcement action is required, such as making an arrest or effecting a search warrant. This is an unrealistically narrow view of what constitutes law enforcement action. The City, on the other hand, essentially argued that if an officer is in uniform and is assaulted, the statutory offense has been completed. This rule is far too broad, given that it would impose liability if an irate shopper crashes her shopping cart into an off duty—but uniformed—officer for cutting into the checkout line in front of her at the grocery store. Accordingly, while the ease of application is tempting, we reject both of the proposed bright line rules.

3. Questions about the scope of a peace officer's authority arise in many different contexts, including respondeat superior, workers' compensation, and civil rights cases. We specifically note that our analysis and holding in this case should not be construed as applying in all contexts in which the question of an officer's authority may arise.

peace.... [S]ince he is always obligated to attempt to prevent the commission of crime in his presence, any action taken by him toward that end, even in his official off-duty hours, falls within the performance of his duties as a police officer.

*Banks v. Chicago,* 11 Ill.App.3d 543, 297 N.E.2d 343, 349 (1973). While a peace officer will not always be on the government's payroll, even peace officers who are "off duty" will typically spring into action when circumstances so require, i.e., when the law has been or is about to be broken. Accordingly, we conclude that when a law enforcement officer responds to preserve law and order or to detect and deter crime, he is acting "within the scope of his authority as a peace officer," Utah Code Ann. § 76-5-102.4, even though he may be working at another job.[4]

¶ 15 We also reject Defendant's related contention that there is insufficient evidence to support the jury's decision that Officer Vu was acting within the scope of his authority as a peace officer. Viewed in a light most favorable to the jury, the facts are that Officer Vu was in his police uniform and listening to the police dispatch radio prior to Defendant's arrival at the emergency room. Upon his arrival, Defendant's large stature, his aggressive conduct, and the fact that he was a suspect in a domestic violence incident prompted Officer Vu to call for police back-up. Defendant was belligerent, twice threatened to kill his brother upon his release, refused to calm down to facilitate treatment, and verbally threatened to physically assault Nurse Rigdon and Officer Vu. Seeing that the situation was worsening, Officer Vu decided to take Defendant under control before he had the opportunity to harm himself or others. When Officer Vu attempted to take Defendant under control, Defendant swung at Officer Vu and continued to kick and resist after he had been taken to the ground.

¶ 16 Considering all the circumstances, we conclude that there is ample evidence on which the jury could find that Defendant was guilty of assaulting a peace officer pursuant to section 76-5-102.4. *See* Utah Code Ann. § 76-5-102.4 (2003). And the trial court did not err in denying Defendant's motion for a directed verdict.

## II. Prosecutorial Misconduct

¶ 17 Defendant next contends that the prosecutor committed misconduct during closing argument. More specifically, Defendant argues that the prosecutor misstated the law regarding mental illness as an affirmative defense. "Because [Defendant] did not object to the comments during the trial, we review this issue for plain error." *State v. Waldron,* 2002 UT App 175, ¶ 18, 51 P.3d

---

4. Our conclusion is consistent with persuasive case law from other jurisdictions. Defendant contends that he is unable to find a single case holding that an officer moonlighting as a private security guard acted within the scope of his authority as a peace officer, unless "there was first a clear showing of police authority and then an arrest." To the contrary, there is broad-based support for the proposition that a peace officer may perform official law enforcement duties even though he is working as a part-time security guard. *See, e.g., State v. Kurtz,* 78 Ariz. 215, 278 P.2d 406, 407–09 (1954) (holding that police officers who were privately paid and "employed as 'bouncers' or 'watchmen'" were peace officers discharging the duties of their office when they intervened to breakup a disturbance on the employer's premises); *State v. Robinson,* 379 So.2d 712, 713–15 (Fla.Dist.Ct.App.) (holding that a police officer privately employed as a security officer was engaged in the lawful execution of his law enforcement duties when he assisted other security officers "who were struggling to maintain custody of the man they had arrested and were in the process of removing"), *cert. denied,* 388 So.2d 1117 (Fla.1980); *State v. Brown,* 989 S.W.2d 652, 653–54 (Mo.Ct.App. 1999) (stating that where an off-duty police officer serving as a part-time security guard attempted to apprehend three suspected shoplifters, he was "engaged in the performance of [his law enforcement] duties imposed on him by law"); *State v. Sanchez,* No. 73926, 1999 WL 359195, at *1, 1999 Ohio App. LEXIS 2546, at *3 (June 3, 1999) ("A police officer may be performing his official duties when he is working a part-time security job."); *Wood v. State,* 486 S.W.2d 771, 773–74 (Tex.Crim.App.1972) (stating that the defendant could not "raise as an affirmative defense the fact that [police] officers were not working for the Dallas Police Department and therefore not in the lawful discharge of their duties" simply because they were off-duty and working for a private corporation directing traffic); *State v. Phillips,* 205 W.Va. 673, 520 S.E.2d 670, 677 (1999) (An "[o]fficer['s] duty to the public as a police officer did not terminate while he was also performing the non-official tasks for which [his secondary employment as a security guard] paid him.").

21. "To find plain error, we must determine that the error was obvious and that it was prejudicial." *State v. Dunn*, 850 P.2d 1201, 1224 (Utah 1993).

¶ 18 The first prong of the plain error test is satisfied if an obvious error exists. *See id.* A prosecutor's statements constitute misconduct, and thus an error, if her "remarks 'call[ ] to the jurors' attention matters which they would not be justified in considering in reaching a verdict.'" *State v. Saunders*, 1999 UT 59, ¶ 28, 992 P.2d 951 (quoting *State v. Creviston*, 646 P.2d 750, 754 (Utah 1982)) (alteration in original). If the prosecutor misstates the law during closing argument, she necessarily calls the jurors' attention to matters they are not justified in considering, thus satisfying the first prong of the prosecutorial misconduct test. *See State v. Longshaw*, 961 P.2d 925, 929 (Utah Ct. App.1998). The second prong of the plain error test, prejudice, is satisfied if, "absent the comment, there would be a reasonable likelihood of an outcome more favorable to [Defendant]; in other words, [if] ... our confidence in the verdict is undermined." *Dunn*, 850 P.2d at 1224.

¶ 19 During closing argument, the prosecutor stated that "[Defendant], you know, not remembering [5] ... what happened that day and him hallucinating, is—is not a defense for what occurred[.]" Defendant claims that this represents a misstatement of the law regarding mental illness as an affirmative defense. Defendant, however, did not raise or develop a mental illness defense in this case.[6] Accordingly, because no mental illness defense was ever presented or developed as a viable theory in this case, we conclude that the prosecutor did not misstate the law when she simply reminded the jury that mental illness could not be considered as a defense. As such, no error occurred, and Defendant's plain error argument fails. *See Waldron*, 2002 UT App 175 at ¶ 19, 51 P.3d 21 (stating that where the

prosecutor's remarks did not call the jurors' attention to matters they were not justified in considering, no error occurred, no prejudice analysis was required, and plain error argument failed).

### III. Ineffective Assistance of Counsel

¶ 20 Defendant last argues that his trial counsel provided ineffective assistance by failing to object to the prosecutor's purportedly improper statements during closing argument and by failing to raise a mental illness defense. For a successful ineffective assistance of counsel claim, a "defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Accord State v. Hales*, 2007 UT 14, ¶ 68, 152 P.3d 321.

¶ 21 We have already effectively disposed of Defendant's first claim of ineffective assistance of counsel. We determined in the preceding section that the prosecutor's statements were not inappropriate. It follows that in not objecting to the statements, defense counsel's performance was not deficient.

¶ 22 As to Defendant's claim that his trial counsel's performance was deficient because counsel failed to raise a mental illness defense, nothing in the record validates this claim, and we simply cannot tell where a mental illness defense would have led. Notwithstanding some testimony from his mother that Defendant seemed "manic," the thrust of the evidence in the record is that Defendant was angry—and perhaps intoxicated—not that he was mentally ill. Defendant's mother testified that "[Defendant] was

5. As to the first part of the statement, the prosecutor correctly explained that memory loss is not a defense to the crime charged, nor does it, by itself, establish a mental illness defense. *See State v. Jenner*, 451 N.W.2d 710, 721 (S.D.1990).

6. Defendant's trial counsel later seemed to recognize that Defendant's behavior stemmed from alcohol abuse or anger management problems rather than mental illness by suggesting, during sentencing, that domestic violence counseling and alcohol treatment might be appropriate.

just very mad, very angry." Furthermore, Defendant himself testified, "[I was] obviously agitated and probably looked like I was possessed ... I was pretty angry." Finally, during closing argument Defendant's trial counsel stated, "[Defendant] is irritated, he's mad, he's already mad that his brother cut off his finger, so yeah, he's mad.... And he's mad, he's swearing.... He's mad. That's not a crime." Nor is it mental illness.

[redacted] ¶ 23 Defendant argues that statements made by hospital staff that Defendant was hallucinating and appeared to be experiencing psychosis are evidence that he was suffering from mental illness. But statements from emergency room personnel, not shown to have expertise in psychiatric diagnosis, are insufficient to establish that Defendant was operating with reduced mental capacity. *See* Utah Code Ann. §§ 77–14–4, 77–16a–301 (2003) (establishing procedure by which one appropriately raises a mental illness defense). As such, those statements are mere speculation and cannot alone establish that Defendant had a mental illness at the time of the assault.

¶ 24 There is simply no evidence in the record to suggest that had trial counsel pursued a mental illness defense, mental health experts would have found anything other than that Defendant was injured, agitated, and extremely angry about his condition. Thus, we cannot say that trial counsel's "performance fell below an objective standard of reasonable professional judgment." *Parsons v. Barnes,* 871 P.2d 516, 521, *cert. denied,* 513 U.S. 966, 115 S.Ct. 431, 130 L.Ed.2d 344 (1994). Accordingly, we conclude that Defendant's ineffective assistance claims are also without merit.

## CONCLUSION

¶ 25 We conclude that the trial court did not err in determining that Officer Vu acted "within the scope of his authority as a peace officer," Utah Code Ann. § 76–5–102.4, when he intervened to prevent Defendant from committing a crime. We further conclude that when a peace officer responds to preserve law and order or detect and deter crime, he is acting "within the scope of his authority as a peace officer," *id.,* even if he is working at another job.

¶ 26 We also conclude that the prosecutor did not misstate the law regarding mental illness as an affirmative defense because it had not been raised and developed as a defense in this case. Therefore, the prosecutor's remarks did not constitute misconduct, the trial court did not commit plain error, and defense counsel did not perform deficiently in not objecting.

¶ 27 Finally, there is simply no competent evidence suggesting that a mental health expert would have concluded anything other than that Defendant was agitated and angry at the time of the assault. Accordingly, defense counsel was not ineffective in failing to raise a mental illness defense.

¶ 28 Affirmed.

¶ 29 WE CONCUR: RUSSELL W. BENCH, Presiding Judge and WILLIAM A. THORNE JR., Judge.