**2015 UT App 45**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
WILLIAM RICKER FERGUSON,
Defendant and Appellant.

Opinion
No. 20130005-CA
Filed February 26, 2015

Third District Court, West Jordan Department
The Honorable Terry L. Christiansen
No. 111400013

Nathalie S. Skibine, Attorney for Appellant

Sean D. Reyes and Deborah L. Bulkeley, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGE JOHN A. PEARCE and SENIOR JUDGE RUSSELL W.
BENCH concurred.[1]

CHRISTIANSEN, Judge:

¶1     Defendant William Ricker Ferguson appeals his conviction
after a jury trial for one count of insurance fraud, a second degree
felony. We affirm.

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special
assignment as authorized by law. *See generally* Utah R. Jud. Admin.
11-201(6).

BACKGROUND

¶2 In 2009, Defendant operated a business that used several lasers for cosmetic procedures, including scar reduction and hair removal.[2] In May 2009, cable installers working near Defendant's business struck a sprinkler line, causing the basement to flood. Defendant and his business manager immediately entered the basement and noticed that the water had reached a depth of about an inch and a half. The water drained from the basement through a drain in the floor, resulting in only minor property damage. None of Defendant's lasers were located in the basement at the time of the flooding.

¶3 In the days following the flooding, Defendant repeatedly asked his business manager to write a statement describing the property damage for insurance purposes. Defendant requested that his business manager specifically state "that there were lasers in the basement that were damaged." Defendant even offered the business manager "a cut" of the insurance proceeds if she agreed to do so. But the business manager refused Defendant's repeated requests.

¶4 The owner of the cable-installation company eventually filed a claim with his insurance company on Defendant's behalf for the replacement cost of the lasers. To obtain proof of the lasers' value for the claim, Defendant contacted the laser manufacturer and requested that the manufacturer provide a quote for the replacement cost of the lasers. The laser manufacturer prepared the requested quote, which set forth the replacement cost of a new laser and stated that the lasers had been damaged beyond repair. The manufacturer gave the invoice to Defendant, who then submitted the invoice to the insurance company.

---

2. Because we are reviewing a jury verdict, "we examine the evidence and all reasonable inferences drawn therefrom in a light most favorable to the verdict, and we recite the facts accordingly." *State v. Kruger*, 2000 UT 60, ¶ 2, 6 P.3d 1116.

¶5 A claims adjuster and an investigator employed by the insurance company investigated Defendant's claim. Both the adjuster and the investigator sought Defendant's and the laser manufacturer's cooperation in securing evidence of the damaged lasers. After neither Defendant nor the manufacturer cooperated with the investigation, the insurance company denied Defendant's claim.

¶6 In January 2011, the State charged Defendant with one count of insurance fraud pursuant to Utah Code section 76-6-521. Defendant was tried by a jury. At the close of the State's case, Defendant moved for a directed verdict. The trial court denied Defendant's motion. The jury found Defendant guilty, and he appeals.


ISSUE AND STANDARD OF REVIEW

¶7 The sole issue on appeal is whether the trial court erred by denying Defendant's motion for a directed verdict. In ruling on the motion, the trial court determined that Utah's insurance-fraud statute does not require the State to prove that a defendant pursued a fraudulent claim to the point it could reasonably be expected to be paid by the insurer. *But see State v. Wilson*, 710 P.2d 801, 803 (Utah 1985). Defendant's argument that the trial court misinterpreted the insurance-fraud statute presents a question of law, which we review for correctness. *See Salt Lake City v. Christensen*, 2007 UT App 254, ¶ 7, 167 P.3d 496.


ANALYSIS

¶8 Defendant argues that the trial court erred by denying his motion for a directed verdict on the charge of insurance fraud. Following the close of the State's case, defense counsel moved for a directed verdict, arguing that the State failed to present sufficient evidence to show that Defendant had "presented a claim" to the insurer for payment. *See* Utah Code Ann. § 76-6-521(1)(b)(i)(A) (LexisNexis 2008). "A person commits a fraudulent insurance act

if that person with intent to defraud . . . presents, or causes to be presented, any oral or written statement or representation . . . as part of or in support of a claim for payment or other benefit pursuant to an insurance policy . . . ." *Id.* Defendant premised this argument on *State v. Wilson*, in which the Utah Supreme Court held that "one who causes a [false or fraudulent] claim 'to be presented' must have at least pursued a company's claim procedure to the point where the insurance company would reasonably be expected to pay a claim on the basis of the defendant's oral or written submittals." 710 P.2d 801, 803 (Utah 1985). Defendant argued that the State failed to prove that Defendant pursued his claim to the point where Sharp's insurance company would reasonably have been expected to pay on the claim. The trial court rejected Defendant's argument, explaining that post-*Wilson* amendments to the insurance-fraud statute rendered the supreme court's analysis in *Wilson* inapplicable to Defendant's case.

¶9     On appeal, Defendant again asserts that because the State failed to produce evidence that Defendant "pursue[d] a claim to the point where the 'insurance company would reasonably be expected to pay a claim on the basis of [his] oral or written submittals,'" the trial court erred by not granting his request for a directed verdict. (Quoting *Wilson*, 710 P.2d at 803.) Defendant argues that the plain language of the insurance-fraud statute and the legislative history behind the post-*Wilson* amendments to that statute demonstrate that the supreme court's holding in *Wilson* "remains binding on the trial court and on this court despite an esthetic rearrangement of the relevant language in the fraudulent insurance act statute." Therefore, in evaluating Defendant's claim, we analyze both the version of the insurance-fraud statute in effect at the time Defendant submitted the invoice to Sharp's insurer and the version in effect when the supreme court decided *Wilson.*

¶10     When we engage in "statutory interpretation, our primary goal is to effectuate the intent of the [Utah] Legislature." *LeBeau v. State*, 2014 UT 39, ¶ 20, 337 P.3d 254. "The best evidence of the Legislature's intent is the statute's plain language." *Id.* "We presume that the [L]egislature used each word advisedly and give

effect to each term according to its ordinary and accepted meaning." *Id.* (alteration in original) (citation and internal quotation marks omitted). Additionally, we interpret statutes to give meaning to all parts, and avoid rendering portions of the statute superfluous. *Id.* "We resort to legislative history and other interpretive tools only if the statute's plain meaning cannot be discerned from its text." *Reynolds v. Bickel*, 2013 UT 32, ¶ 10, 307 P.3d 570.

¶11     The primary evidence supporting the State's allegation that Defendant committed insurance fraud is the invoice Defendant submitted to the insurance company. The version of the insurance-fraud statute under which Defendant was charged provides in relevant part,

> A person commits a fraudulent insurance act if that person with intent to defraud:
> . . .
> (b) presents, or causes to be presented, any oral or written statement or representation:
>> (i)(A) as part of or in support of a claim for payment or other benefit pursuant to an insurance policy, certificate, or contract;
>> . . . and
>> (ii) knowing that the statement or representation contains false or fraudulent information concerning any fact or thing material to the claim . . . .

Utah Code Ann. § 76-6-521(1) (LexisNexis 2008). Defendant disputes neither that he acted with intent to defraud when he submitted the invoice to Sharp's insurance company nor that he presented the invoice in support of his claim for the replacement value of the lasers knowing that they had not in fact been damaged. Rather, he contends that *Wilson*'s holding that a defendant must have pursued a claim to a point where the insurer would reasonably be expected to pay "is still supported by the plain language of the [current] statute."

¶12    The prior version of the statute, as interpreted by the supreme court in *Wilson,* provided,

> Every person who presents, or causes to be presented, any false or fraudulent claim, or any proof in support of any such claim, upon any contract of insurance for the payment of any loss, or who prepares, makes or subscribes any account, certificate of survey, affidavit or proof of loss, or other book, paper or writing, with intent to present or use the same, or to allow it to be presented or used, in support of any such claim is punishable as in the manner prescribed for theft of property of like value.

Utah Code Ann. § 76-6-521 (Allen Smith Co. 1978). In analyzing this prior version of the insurance-fraud statute, the Utah Supreme Court focused on the acts that would satisfy "presentment" of a fraudulent claim. *Wilson*, 710 P.2d at 802–03. The court first observed that "the critical language of the statute is '[e]very person who presents, or causes to be presented, any false or fraudulent claim." *Id.* at 802. Because the statute did not provide a definition for what constitutes "presentment of a claim," the court used the insurance company's practices "as a guide to when a claim is deemed presented." *Id.* at 803. Ultimately, the court held that "one who causes a claim 'to be presented' must have at least pursued a company's claim procedure to the point where the insurance company would reasonably be expected to pay a claim." *Id.*

¶13    Notably absent from the analysis in *Wilson* is any discussion of the alternative form of insurance fraud prohibited by the statute: presenting, or causing to be presented, "any proof in support of any [false or fraudulent] claim." Utah Code Ann. § 76-6-521 (Allen Smith Co. 1978). Defendant asserts that this omission is of no consequence, arguing that "[t]he 'claim, or any proof in support of such a claim' language from the version of the statute the court analyzed in [*Wilson*] is redundant because no fraudulent claim could be presented without some kind of proof in support of such a claim." However, principles of statutory interpretation require both this court and the Utah Supreme Court to "give meaning to all

parts" of a statute and avoid "rendering portions of the statute superfluous." *LeBeau*, 2014 UT 39, ¶ 20 (citation and internal quotation marks omitted). We therefore must reject Defendant's argument that the statute's prohibitions on presenting a fraudulent claim and presenting proof in support of such a claim criminalize the same conduct. Accordingly, we conclude that *Wilson* does not stand for the proposition that "presentment" of proof in support of a fraudulent claim requires a defendant to pursue a claim to the point where it can be expected to be paid—a question that was neither addressed nor answered by the *Wilson* court.

¶14   This distinction is important because the plain language of the version of the insurance-fraud statute under which Defendant was charged no longer speaks in terms of presenting a fraudulent claim. Rather, the statute criminalizes presenting, with fraudulent intent, "any oral or written statement or representation . . . *as part of or in support of* a claim for payment," which the defendant knows contains false information material to the claim. Utah Code Ann. § 76-6-521(1) (LexisNexis 2008) (emphasis added). Thus, the conduct criminalized by the current version of the statute is most closely analogous not to the claim-presentment issue analyzed in *Wilson*, but to the "proof in support" issue that the court left unresolved.[3] We therefore conclude that *Wilson* does not control

---

3. Defendant asserts that the amendment of the statute was merely an "esthetic rearrangement" of the statutory language and that the amended statute simply "concisely criminalizes the same conduct: the presentation of a claim that includes fraudulent misrepresentations." However, absent evidence of contrary legislative intent, we presume that when the legislature chooses to modify a statute, the "amendment is intended to change existing legal rights." *See Madsen v. Borthick*, 769 P.2d 245, 251–52 & n.11 (Utah 1988). Aside from eliminating the reference to presenting a fraudulent claim, the amended statute expands the range of prohibited conduct from presenting "proof in support of [a fraudulent] claim" to presenting "any oral or written statement" as part of or in support of a claim, fraudulent or not, so long as the defendant acts with the intent to defraud and knowledge of a

(continued...)

the outcome in this case and does not require reversal of the trial court's ruling.

¶15    Defendant has failed to explain how the plain language of the amended insurance-fraud statute requires the State to prove that Defendant pursued the insurance claim to the point of payment. Neither has Defendant advanced any other argument for overturning the trial court's ruling. We therefore conclude that Defendant has failed to demonstrate error in the trial court's denial of his motion for a directed verdict.

CONCLUSION

¶16    The plain language of the insurance-fraud statute no longer requires that a person present a complete fraudulent or false insurance claim in order to commit the crime. Thus, the Utah Supreme Court's interpretation of the claim-presentation element under the prior version of the insurance-fraud statute is not applicable to this case because the State charged and Defendant was tried under the amended statute. Because Defendant premised his motion for a directed verdict solely on this interpretation of the prior version of the statute, and because Defendant has not argued that the trial court erred in any other way, we affirm the trial court's denial of Defendant's motion.

––––––––––––

---

3. (...continued)
misrepresentation. *Compare* Utah Code Ann. § 76-6-521 (Allen Smith Co. 1978), *with* Utah Code Ann. § 76-6-521(1) (LexisNexis 2008). We therefore cannot agree with Defendant that the amendment of the statute was purely stylistic.