PRATHER, Justice, for the court:
On August 27, 1986, Timothy Cagle was convicted in the Circuit Court of Choctaw County for the offense of simple assault on a fireman in violation of § 97-3-7(l)(a) of the Miss.Code (Supp.1985) and sentenced to serve a term of three years in the custody of the Mississippi Department of Corrections, suspended, placed on probation and ordered to pay a fine of $500. The appellant appeals the conviction and assigns as error:
(1) The trial court erred when it held that a fireman from a city in another county was nevertheless a fireman within the meaning of a criminal statute when engaged in rescuing individuals from a wrecked automobile at which there was no fire.
(2) The trial court erred when it held that the evidence adduced at the trial below was sufficient to withstand a motion for a directed verdict of not guilty.
I.
After midnight, January 1, 1986, New Year’s Day, an automobile traveling south on Mississippi Highway 15, about six miles south of Ackerman, Mississippi, in Choctaw County, at a highly excessive rate of speed, left the highway, and struck a tree. Two young male occupants were killed outright. Three of the other occupants were trapped in the smashed vehicle, but ultimately survived.
The Ackerman Voluntary Fire Department responded to the scene, in the charge of an assistant chief. Upon seeing the condition of the vehicle, the assistant chief requested the assistance of the Louisville Fire Department in extricating the three trapped individuals. The Louisville Fire Department was the only group with the “Jaws of Life”, a mechanical device used for rescuing people who were trapped in a badly smashed up vehicle.
Receiving the call, five members of the Louisville Fire Department responded to the wreck scene. These men were dressed in full turn-out yellow uniforms. A hundred or more onlookers had gathered at the accident scene, among which bystanders was the defendant, Timothy Cagle. Cagle and several other of his friends were desperately attempting to free the occupants from the car. One of the occupants of the car, Bill Bounds, was a close personal friend of Cagle.
Prior to the arrival of the Louisville Fire Department, the group of men was not able to extricate any of the victims from the car. With the aid of the Jaws of Life, and the Louisville Fire Department, the group was able to pry the door open on the vehicle.
However, Mr. Bounds’ legs were pinned underneath the dash. Seeing this situation, the Louisville Fire Department went to work in attempting to pry the dash away from Mr. Bounds.
At this point, there is a discrepancy in the testimony as to the events preceding the extrication of Mr. Bounds. Chief Sinclair reported that the defendant came up and wanted to talk to Mr. Bounds. The chief, believing that the crew nearly had Mr. Bounds out of the car, asked Cagle to please stand back for a few minutes. The chief testified that the defendant, Cagle, *5 responded by hitting the chief in the left eye with his fist.
In addition to assaulting the chief, the record reveals that Cagle also had a confrontation with Mr. Stanton, one of the other members of the Louisville Fire Department. Mr. Stanton testified, “I looked back down to see if they needed anything, and when I looked up, he caught me under the chin, and we went back around behind the hood of the car.” Cagle verifies the fact that he struck Mr. Stanton. Nonetheless, Cagle denies assaulting Terrell Sinclair.
In direct contradiction to the evidence presented by Chief Sinclair, Cagle testified that a man in a camouflaged uniform had asked him to move back. Cagle responded by moving back about two feet and squatting down in order to be near enough to console Mr. Bounds. At this time, Cagle testified that one of the firemen (supposedly Mr. Stanton) grabbed him bythe arm. Cagle testified, “he grabbed me and drug me across — maybe three feet — and we fell, and it threw me in the ditch. Well, I hit face first. My glasses came off, and rolled up under me. And, then, my stepbrother jumped on my back and I thought it was him jumped on my back.” Responding to the fireman’s actions, Cagle testified that he punched the fireman with the big mous-tache (Mr. Stanton).
Having presented the contrasting facts, the record positively reveals that several of Cagle’s friends attempted to subdue him. At this point, Johnny Ellington, a highway patrolman on duty at the scene, approached the defendant, Cagle. The officer testified that the defendant grabbed him by the leg. Knowing that Cagle had been drinking, the officer decided to handcuff him. At this point, the officer testified that, “His (Ca-gle’s) daddy came running out there. He said, ‘Johnny, if you’ll let him go and leave him alone, I’ll get him away from here.’ ” Cagle was removed from the scene of the accident.
II.
Within the terms of a criminal statute does a fireman employed in a particular city continue to be a fireman when he is outside that city and even outside the county at the scene of an automobile wreck when there is no fire?
In addressing this first proposition, counsel for Cagle points to § 97-3-7(l)(a) of the Miss.Code (Supp.1985). This section reads:
(1) A person is guilty of simple assault if he (a) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or (b) negligently causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; or (c) attempts by physical menace to put another in fear of imminent serious bodily harm/ and, upon conviction, he shall be punished by a fine of not more than five hundred dollars ($500.00) or by imprisonment in the county jail for not more than six (6) months, or both. Provided, however, a person convicted of simple assault upon a law enforcement officer or fireman while such law enforcement officer or fireman is acting within the scope of his duty and office shall be punished by a fine of not more than one thousand dollars ($1,000.00) or by imprisonment for not more than five (5) years, or both.
Appellant here contends that the allegedly assaulted individual must be in office as a fireman and within his jurisdiction. There must also be a duty to act by virtue of that office. Here, appellants argue that the Louisville fireman was outside his jurisdiction in Choctaw County and that he could not have been held to a duty to act outside his jurisdiction. Since the statute above is violated when the fireman is acting within the “scope of his duty and office,” the defendant asserts that he did not violate the criminal statute as it is written. The Louisville fireman, it is contended, was not a fireman or officer, but merely a volunteer at an automobile accident scene, not a fire scene.
Yet another statute needs to be considered. Section 21-25-3, Miss.Code of 1972 gives the municipality the power to establish and maintain fire departments, including the right to attend and help extinguish a fire outside the city limits. Addi *6 tionally, § 21-25-5, Miss.Code of 1972, specifically addresses the issues raised in this assignment of error. § 21-25-5 reads as follows:
The fire department, including the apparatus and all vehicles of such departments, are hereby authorized to use the roads, highways, streets and alleys outside the corporate limits of such municipalities owning and operating such fire fighting and fire prevention equipment, for the purpose of aiding in the extinguishing and prevention of fires or in the alleviating of damages of injuries caused by tornadoes or other casualties in locations outside the corporate limits of such municipalities. For the purpose of expediting the extinguishment or prevention of fires and of aiding in the rescue of persons, or preventing other damage to either persons or property in such locations outside the corporate limits of such municipalities or in cities, towns, or villages located and situated beyond the corporate limits of such municipalities owning such equipment, such fire departments are hereby extended the right of way, or priority in use, over the public roads, highways, streets and alleys of the state and counties whether such roads, highways, streets or alleys are maintained by the state, counties, cities, towns, or villages.
To further effectuate and put into force and effect the purposes of this section, such municipalities owning and operating said equipment are hereby declared free of any liability on account of injury to persons or damage to property in going to and from such locations outside the corporate limits when engaged in the extinguishing and prevention of fires or in the alleviating of damages or injuries caused by tornadoes or other casualties, it being the purpose of this section that such municipalities aiding other municipalities or residents of the State of Mississippi located outside the corporate limits of such municipalities shall be entitled to all the benefits and immunities, both from civil and criminal prosecution, as are now enjoyed by such municipalities within their own respective corporate limits. This section shall be liberally construed to effect the purposes thereof. (Emphasis added)
This statute clothes fire departments, its personnel and equipment, with authority to travel beyond municipal boundaries to aid in the rescue of persons with or without the occurrence of a fire. Such is the factual situation here.
The purpose of the statute is clearly to give aid in emergency situations to people in need. The statute provides for a liberal construction to accomplish its purpose.
To accomplish the statutory purpose, the trial judge correctly construed the statute to provide that the Choctaw firemen were authorized under § 21-25-5 to act outside their city boundary, and were not limited to county lines. Having concluded the firemen were legally clothed with this authority, the trial judge correctly held the defendant’s actions to be within the criminal statute § 97-3-7(l)(a).
This interpretation protects firemen who place their lives in jeopardy to render service to others. Otherwise, our dedicated firemen might be reluctant to act in emergency situations. The trial judge acted properly in his ruling.
III.
Did the trial court err when it denied a directed verdict of not guilty of a felony for lack of proof, especially of the requisite criminal intent?
In arguing the second proposition, counsel for Cagle insists that the evidence is highly contradictory. Cagle cites Morgan v. State, 388 So.2d 495 (Miss.1980), as similar to the case at bar. Morgan involved a prosecution for aggravated assault on a fireman while he was acting in the scope of his duty. Therein, this Court in Morgan reversed the felony conviction stating that, “The positive testimony of the defendant that he did not know Coleman was a fireman, convinces us that defendant was guilty only of the lesser included offense of simple assault_” Mat 498. Following Morgan, counsel for Cagle believes that *7 the felony conviction should be reversed in this case.
Cagle never contended that he did not realize: “with the red fire truck there with Louisville Fire Department written across it; with the Jaws of Life being operated by a fireman; all in turn-out yellow uniforms, that he was striking a fireman.”
The evidence was sufficient to stand the defendant’s motion for directed verdict. The disputed testimony was submitted to the jury and as the factfinder, the jury returned its verdict of guilty. Wash v. State, 521 So.2d 890, 896 (Miss.1988); Billiot v. State, 454 So.2d 445, 463 (Miss.1984). This Court affirms.
It is obvious that this situation was viewed by the trial judge with both justice and compassion. The three year sentence, all suspended, and the $500.00 fine are affirmed.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.