MAXWELL, J„
for the Court:
¶ 1. Mississippi has a special interest in protecting its law enforcement officers who are acting within the scope of their duties — an interest reflected in our assault statute.[1] While simple assault is a misdemeanor, punishable by up to six months in jail, simple assault on a law enforcement officer acting within the scope of his duty is a felony, punishable by up to five years in prison.[2]
¶ 2. Scott Herman Bates contends that he cannot be guilty of the enhanced crime of simple assault on a law enforcement officer because the certified law enforcement officer he assaulted, Deputy Sheriff James Cox, was working off-duty as a private security guard. But we find the circumstances of Deputy Cox’s private em *807 ployment neither prevented him from acting within the scope of his duties as a law enforcement officer nor removed him from the assault statute’s special protections.
¶ 3. The night of the assault, Deputy Cox was working at a restaurant in his official uniform, with his sheriffs approval. When Deputy Cox confronted Bates, who had refused to leave at closing time, Bates yelled that the only thing stopping him from beating up Cox was Cox’s uniform. And when Bates did assault Deputy Cox, the two men were in the parking lot, where Deputy Cox had followed Bates— not at the request of the restaurant but instead to follow-up on his hunch that Bates was about to break the law. Thus, when Bates broke the law and shot at Deputy Cox, Cox was acting within the scope of his duty as a law enforcement officer.
¶ 4. We therefore affirm Bates’s felony conviction and five-year sentence.
Background
¶5. Cox is a deputy with the Hinds County Sheriffs Department. During the summer of 2011, with his sheriffs approval, he moonlighted as a security guard at a Hinds County restaurant, Reed Pierce’s, on Friday and Saturday nights.
¶ 6. Bates was a patron one of those late weekend nights. On that night, last call had come and gone, and the wait staff was hanging around to divide up tips. Bates hung around too, talking to some of the staff and their friends. But because the manager did not know Bates, the manager told Deputy Cox to ask Bates to leave.
¶ 7. Bates took exception to Deputy Cox’s request, pointing out that other people were still at the restaurant. Even when Deputy Cox explained that those others could stay because they were either staff or friends of the manager, Bates refused to leave. Bates shouted at Deputy Cox, taunting him that only his uniform protected him from a beating at Bates’s hands. Bates also bragged that he would work his connections with the Hinds County Sheriffs Department to get Deputy Cox fired. Only after two more security guards stepped in did Bates succumb to being escorted out of the restaurant. Concerned that Bates may be up to something, Deputy Cox and the two other guards followed Bates into the parking lot.
¶ 8. Outside, Bates kept threatening to beat up Deputy Cox and ruin his law enforcement career. When Bates finally started walking towards his truck, Deputy Cox and the two guards held their position, keeping an eye on Bates. Instead of driving out of the parking lot, Bates drove towards Deputy Cox and the two other guards. He made a sharp turn so that his truck was broadside to them. He fired his gun, and then sped off.
¶ 9. Deputy Cox jumped into his marked vehicle and radioed that he was in ’ pursuit of a man that had shot at him. He followed Bates to a nearby house. When more deputies arrived, they arrested Bates. In his truck, they found a .38 revolver and a spent shell casing.
¶ 10. Bates was charged with aggravated assault on a law enforcement officer. See Miss.Code Ann. § 97-3-7(2) (Supp. 2010).[3] During trial, after the court denied his motion for a directed verdict, *808 Bates testified in his own defense. He admitted his gun went off in the parking lot but claimed it had been triggered by accident. At the end of trial, the State requested and was granted an instruction on the lesser-ineluded offense of simple assault on a law enforcement officer. See Miss.Code Ann. § 97-3-7(1). Given the options of finding Bates guilty of aggravated assault on a law enforcement officer, guilty of simple assault on a law enforcement officer, or not guilty, the jury found Bates guilty of simple assault on a law enforcement officer. The court sentenced Bates to serve a term of five years. See id.
¶ 11. After the court denied his motion for a judgment of acquittal notwithstanding the jury’s verdict, Bates timely appealed.
Discussion
¶ 12. In his appeal, Bates makes two assertions — (1) that he is entitled to a judgment of acquittal because the evidence was insufficient to convict; (2) alternatively, that he is entitled to a new trial because the trial court erred in admitting testimony by the jail nurse who had been on-duty the night he was arrested. For the following reasons, we find Bates is entitled to neither and affirm his conviction.

I. Sufficiency of the Evidence

¶ 13. Bates was convicted of simple assault on a law enforcement officer in violation of Mississippi Code Annotated section 97-3-7(1). This required the State to prove Bates (1) committed simple assault, (2) on a law enforcement officer, (3) while the law enforcement officer was “acting within the scope of his duty, office, or employment.” Miss.Code Ann. § 97-3-7(1). Bates does not contend that the State failed to prove he committed simple assault by attempting through physical menace to put Deputy Cox in fear of imminent serious bodily harm. See id. Bates also concedes that Deputy Cox was a law enforcement officer. See Miss.Code Ann. § 45-6-3(c) (Rev. 2011) (defining “law enforcement officer”). What Bates challenges is the final element — that Deputy Cox was acting within the scope of his duty, office, or employment at the time Bates assaulted him.
¶ 14. To be more precise, Bates argues that Deputy Cox could not have been acting within the scope of his “employment” that night, based on the undisputed testimony that Deputy Cox was being paid by Reed Pierce’s to work as private security.[4] But the indictment did not say Deputy Cox had been acting “within the scope of his employment.” It alleged that Deputy Cox had been acting “within the scope of his duty and office.” Nor did the jury instructions limit Deputy Cox’s actions to “scope of employ *809 ment.” Tracking the language of the indictment, they instructed the jury that, to find Bates guilty, it had to find Deputy Cox was “acting within the scope and course of his duty and office.” See Miss. Code Ann. § 97 — 3—Y(b)(i) (enhancing penalty when assault victim is a law enforcement officer who “is acting within the scope of his duty, office or employment” (Emphasis added)). Deputy Cox’s private employment is indeed relevant-but only to determine whether it prevented Deputy Cox from acting within the scope of his duty as a law enforcement officer.
¶ 15. While no Mississippi case has dealt with this exact issue, other states have. And the consensus is that an officer’s private employment as a security guard does not limit his authority or responsibility to act within his official duties. See, e.g., S.D. v. State, 11 So.3d 401, 402 (Fla.Dist.Ct.App.2009) (“A police officer can be engaged in the lawful performance of his duties when working an off-duty job.”); State v. DeSanto, 172 N.J.Super. 27, 410 A.2d 704, 705 (1980) (“[T]he police uniform has the same significance to the public whether the wearer is technically on or off duty[, and] in such a situation[,] the municipality and its public expect and obtain real benefits from the police officer.”); Salt Lake City v. Christensen, 167 P.3d 496, 501 (¶ 14) (Utah Ct.App.2007) (“[W]hen a law enforcement officer responds to preserve law and order or to detect and deter crime, he is acting'‘within the scope of his authority as a peace officer,’ ... even though he may be working at another job.” (quoting Utah’s assault statute)); Davis v. Commonwealth, 44 Va.App. 562, 605 S.E.2d 790, 792 (2004) (“[T]he coincidence of the officer’s private and public duties during the encounter did not eclipse his authority and responsibility as a law enforcement officer.”); State v. Graham, 130 Wash.2d 711, 927 P.2d 227, 230 (1996) (“[P]olice officers are considered to be under a duty to respond as police officers 24 hours a day.”). Instead, “a police officer retains his or her police officer status, even while off duty in a secondary employment capacity, unless it is clear from the nature of the officer’s activities that he or she is acting exclusively in a private capacity or is engaging in his or her own private business.” State v. Wilen, 4 Neb.App. 132, 539 N.W.2d 650, 660 (1995) (emphasis added); see also State v. Phillips, 205 W.Va. 673, 520 S.E.2d 670, 681 (1999) (holding that an off-duty police officer employed as a security guard “retains his or her official police officer status even in the private employment, unless it is clear from the nature of the officer’s activities that he or she is acting in an exclusively private capacity or engaging in his or her private business”).
¶ 16. We find this common-law principle[5] — that an officer retains his authority to carry out his official duties, even when privately employed — to be particularly true in Mississippi, where our Legislature has found that a law enforcement officer’s employment as private security serves the public interest. Not only has the Legislature authorized certified law enforcement officers to perform private security services during off-duty hours, it also has permitted these officers to wear their official uniforms and carry their official weapons while privately employed — so long as the chief or sheriff has approved the private employment, based on a determination that the employment would serve *810 the public interest. Miss.Code Ann. § 17-25-11 (Rev. 2012). While section 17-25-11 requires the private employer to assume any civil liability connected to the officer’s act or omissions, the statute does not strip the officer of his authority to carry out his official duties, if necessary. Instead, the statute does the opposite by literally clothing the officer with the public symbols of his law enforcement authority — his official uniform and firearm. Cf. Cagle v. State, 536 So.2d 3, 6 (Miss.1988) (holding a municipal fireman responding to a car wreck was “acting within the scope of his duty” for purposes of the assault statute, based on a statute that “clothes fire departments, its personnel and equipment, with authority to travel beyond municipal boundaries to aid in the rescue of persons with or without the occurrence of a fire”);[6] see also Wilen, 539 N.W.2d at 660 (holding that an uniformed officer “at the restaurant conveyed to the patrons the presence of law enforcement,” creating a knowledge and expectation that the officer would act officially, if necessary); DeSanto, 410 A.2d at 705 (finding that “the police uniform has the same significance to the public whether the wearer is technically on or off duty”).
¶ 17. As a result, Deputy Cox’s off-duty work as a private security guard did not restrict his ability to act within the scope of his duties as a law enforcement officer. This does not mean that every action Deputy Cox performed for his private employer fell within the scope of his duties as a law enforcement officer. But neither does it mean — as Bates tries to argue — that none of Deputy Cox’s actions could have fallen within the scope of his official duties. So the next question is— does the evidence support that Deputy Cox was in fact acting within the scope of his duty as a law enforcement officer when Bates assaulted him?
¶ 18. We find that it does. Deputy Cox was in full uniform, working at the approval of his sheriff. While Deputy Cox’s initial request that Bates leave was on behalf of Reed Pierce’s, Bates’s hostile reaction triggered Deputy Cox to switch into law-enforcement mode. See Christensen, 167 P.3d at 500-01 (¶¶ 14-16) (holding that the evidence supported a conviction of simple assault on a law enforcement officer because, when the defendant became belligerent, the officer’s role shifted from private security guard to peace officer); *811 Phillips, 520 S.E.2d at 674 (affirming the conviction of assault on an off-duty officer who worked as a private security guard for Wal-Mart and who had been called over to deal with a belligerent customer). Concerned that Bates would do something to violate the peace or endanger someone, Deputy Cox followed Bates outside. With the last patron out the door, Deputy Cox testified that, at that point, his services for Reed Pierce’s had ended. Deputy Cox was now acting as a sheriffs deputy.[7]
¶ 19. Deputy Cox’s instincts were correct. Bates did violate the peace by continuing to threaten Deputy Cox and then by firing his gun. Thus, we find there was sufficient evidence to support the jury’s finding that Bates assaulted Deputy Cox, a law enforcement officer, while he was acting within the scope of his duty as a law enforcement officer.

II. Admissibility of Testimony

¶ 20. We also find the trial judge acted within his discretion when he allowed Bates’s jail nurse to testify over Bates’s objection. See Moody v. State, 841 So.2d 1067, 1094 (¶ 82) (Miss.2003) (“The relevancy and admissibility of evidence are largely within the discretion of the trial court and reversal may be had only where that discretion has been ... so abused as to be prejudicial to the accused[.]”).

A. Nurse’s Testimony

¶ 21. While Travis Williams is a licensed practical nurse, the State had not designated him as a proposed expert witness. The State instead called Williams as a lay witness during its rebuttal.
¶22. In Bates’s version of events, he had not pointed the gun out of his truck window and fired. His gun was accidentally discharged inside his truck, injuring him. According to Bates, when he got into his truck to leave the parking lot of Reed Pierce’s, his loaded .38 revolver was on the floorboard. When he reached down to move the gun from underneath the foot pedals, it went off with a loud bang and a hot flash — ringing his ears and burning his skin.
¶ 23. In response, the State called Williams, the nurse in charge at the Hinds *812 County Detention Center the night Bates was taken in. Williams testified Bates never complained he had suffered a burn or ringing in the ears when his gun went off that night. According to Williams, as part of the jail’s intake process, the booking officers had informed Bates that medical care was available to him and asked him if he had any medical complaints. The officers then gave the intake form to Williams to read and see if Bates required any immediate care. Williams saw no mention that Bates’s skin had been burned or that his hearing had been impaired. Even when the jail doctor evaluated him, Bates never told the doctor he needed treatment for burns on his arms or ringing in his ears. Instead, Williams’s only order regarding Bates’s medical treatment had nothing to do with the shooting.

B. Mississippi Rule of Evidence 602

¶ 24. Bates argues Williams’s testimony was inadmissible under Mississippi Rule of Evidence 602 because it was not based on Williams’s personal knowledge. See M.R.E. 602 (prohibiting a lay witness from testifying to a matter “unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter”). Because Williams was not the one who asked Bates if he required medical care, Bates asserts that Williams should not have been permitted to testify to the absence of a request in Bates’s intake form and jail medical records. As Bates sees it, the only way Williams could have testified is by being designated as an expert. See M.R.E. 703 (permitting expert witness to base opinion on facts made known to him).
¶ 25. But as our supreme court has explained, “[tjypically, an expert witness is an ‘outsider’ to the case who evaluates the evidence in an attempt to explain it to the jury.” Crist v. Loyacono, 65 So.3d 837, 844 (¶ 26) (Miss.2011) (describing that a fact witness, by contrast, “may be virtually any competent person whose testimony is based on personal knowledge” (Internal citation omitted)). And here, Williams was no “outsider.” Instead, Williams was part of the team responsible for Bates’s medical care that night. In this role, Williams had personal knowledge of the jail’s procedures for providing medical care for new inmates who require it. See Moody, 841 So.2d at 1093-94 (¶¶ 80-82) (holding that a nurse had sufficient personal knowledge of autopsy procedures to testify as a lay witness under Rule 602 about the DNA sample taken from a body, even through she was not the one who took the sample but was instead given the sample to preserve); Bolden v. State, 23 So.3d 491, 497 (¶¶ 16-17) (Miss.Ct.App.2009) (holding that a nurse had sufficient personal knowledge of hospital protocol for performing a “rape kit” to testify as a lay witness about the rape-kit results). Part of that procedure required Williams to read Bates’s intake form and medical records in order to be able to care for him. So it was within Williams’s personal knowledge to testify that he did not care for or medicate any burns on Bates’s body because Bates made no complaint despite being given the opportunity.
¶ 26. That Williams may have only been involved in Bates’s care indirectly goes to the weight and credibility — not the admissibility — of Williams’s testimony. See Moody, 841 So.2d at 1094 (¶ 82) (holding that, once nurse’s testimony regarding the autopsy results was properly admitted, “it was for the jury to determine what weight and credit to give the evidence based on [the nurse’s] admission that she did not recall this particular autopsy”). Therefore, we find that the trial judge did not abuse his discretion when he admitted Williams’s testimony about Bates’s lack of medical care for a shooting-related injury.
*813 ¶ 27. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF SIMPLE ASSAULT ON A LAW ENFORCEMENT OFFICER AND SENTENCE OF FIVE YEARS, WITH CREDIT FOR TIME SERVED, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, FAIR AND JAMES, JJ„ CONCUR. CARLTON, J., NOT PARTICIPATING.

. Cf. Hansen v. State, 592 So.2d 114, 146 (Miss.1991) (observing that the murder statute's enhanced penalty when the victim is a peace officer while acting in his official capacity "reflects the state’s special interest in protecting law enforcement officers”).

. Compare Miss.Code Ann. § 97-3-7(1)(a) (Supp.2010) (simple assault) with § 97-3-7(l)(b) (enhanced penalty when the victim is a law enforcement officer or other enumerated protected class).

. Since Bates's arrest, the assault statute had been amended. The substance of simple assault, aggravated assault, and the enhanced penalty are the same but are now codified under different subsections. See 2014 Miss. Laws, Ch. 463, § 1 (S.B. 2476, effective July 1, 2014), amending Miss.Code Ann. § 97-3-7 (Supp.2013). All statutory references in this opinion use the subsections from the version in effect on June 25, 2011, the night Bates assaulted Deputy Cox. See Miss.Code Ann. § 97-3-7 (Supp.2010).

. Bates urges this court to apply tort cases that find an employee is not acting within the scope of his employment — and does not make his employer vicariously liable — when the employee takes a "frolic of his own.” See, e.g., Baker, Donelson, Beaman, Caldwell & Berkowitz, P.C. v. Seay, 42 So.3d 474, 488-89 (¶¶ 40-43) (Miss.2010). Bates characterizes Deputy Cox’s private employment as such a "frolic.”
But our task in this case is not to analyze when an employer, like Hinds County, is civilly liable to a third party for an employee’s actions. Instead, we are dealing with a totally separate issue — hen does a law enforcement officer fall under the enhanced protection of section 97 — 3—7(l)(b)(i) because he is carrying out his official duties, making his assailant guilty of a felony, not a misdemean- or? See Salt Lake City v. Christensen, 167 P.3d 496, 500-01 (¶ 14) (Utah Ct.App.2007) (rejecting criminal defendant’s argument that police officer’s work as a private security hospital was a "frolic on his own” that prevented him from acting within the scope of his official authority).

. "Under the common law, a police officer on ‘off-duty’ status is ‘not relieved of the obligation as an officer to preserve the public peace and to protect the lives and property of the citizens of the public in general.’ " Graham, 927 P.2d at 230 (quoting 16A Eugene McQuillin, The Law of Municipal Corporations § 45.15, at 123 (3d rev. ed. 1992)).

. Our holding is consistent with the Mississippi Supreme Court's analysis of when a fireman — another protected person under section 97-3-7(l)(b) — is acting within the scope of his duty, for purposes of the assault statute. Cagle, 536 So.2d at 5-6. In Cagle, members of the Louisville Fire Department were called to bring their department's "jaws of life” to a car wreck outside the city limits. Timothy Cagle, a friend of the passenger stuck in the car, had been at the scene desperately trying to get his friend out. When the firemen asked . Cagle to get out of the way so that they could pry open the car, the drunk and distraught Cagle punched one of the firemen in the face. Id. at 4-5.
Cagle was convicted of simple assault on a fireman. On appeal, Cagle argued that, when the assault occurred, the fireman had not been acting within the scope of his duty. Instead, Cagle asserted that the fireman was acting as a “volunteer” because he was outside the city limits and not putting out a fire. Id. at 5. In other words,' Cagle argued the fireman’s official duty only encompassed firefighting within the municipality.
The supreme court rejected this argument. The court looked at the statute that authorized the formation of municipal fire departments. Id. at 5-6 (citing Miss.Code Ann. § 21-25-5 (1972)). The statute expressly authorized these departments to send its personnel and equipment outside the municipal limits to perform rescues, fire or no fire. Id. Based on this statute, the court concluded that the firemen — who had responded in full uniform to the wreck — had been "legally clothed with this authority” and, thus, .were acting within the scope of their firemen duties. Id. at 6.

. In State v. Lightner, 108 N.C.App. 349, 423 S.E.2d 827 (1992), the Court of Appeals of North Carolina faced facts veiy similar to ours. The defendant had been convicted of two counts of assault on a law enforcement officer. North Carolina’s assault statute is similar to Mississippi’s, requiring the State to prove that the assault occurred while the law enforcement officer is "is discharging or attempting to discharge a duty of his office.” Id. at 828. The victims were off-duty police officers who were working as security guards for a restaurant. And on appeal the defendant made the exact same argument as Bates does here — that his motion to dismiss should have been granted because the officers were off-duty at the time of the assault. Id. The North Carolina court disagreed and found there was sufficient evidence the two off-duty officers were discharging the duties of their office. The two officers "were off-duty members of the Charlotte Police Department,” ”[t]hey were working in full police uniform and were carrying sidearms,” their "employment with [the restaurant] had been arranged through the Charlotte Police Department,” they “were required to follow Department mandated rules and guidelines,” and "at the time they were assaulted, [they] were attempting to place [the] defendant under arrest,” which is an official duty. Id. at 829.
Similarly, in DeSanto, the defendant argued he could not have committed assault upon a law enforcement officer because at the time his victim was an off-duty officer working as private security for a rock concert. DeSanto, 410 A.2d at 705. But at the time of the assault, the officer was in full uniform and had been assigned to the private security detail by his captain. Id. Thus, the court found that the state had met its burden under New Jersey’s assault statute to prove the victim was acting in the performance of his duty as a law enforcement officer when the assault and battery took place. Id. at 705-06.