PIERCE, Justice,
for the Court:
¶ 1. Scott Herman Bates was convicted of simple assault of a law-enforcement officer in violation of Mississippi Code Section 97-3-7(1). Bates appealed his conviction, claiming he cannot be guilty of the enhanced crime of simple assault on .a law-enforcement officer because the officer he assaulted, Deputy Sheriff James Cox, was working off-duty as a private security guard. The Mississippi Court of Appeals affirmed Bates’s conviction. Bates v. State, 172 So.3d 805, 2014 WL 3824038 (Miss.Ct.App. Aug.5, 2014). The Court of Appeals found that, while Deputy Cox was working for a private restaurant the night the assault occurred, he was acting within the scope of his duty as a law-enforcement officer when Bates broke the law and shot at Deputy Cox. Id. at *1,-.
¶ 2. Bates thereafter petitioned for writ of certiorari, which this Court granted on the question of whether there was sufficient evidence to support a finding that Deputy Cox was acting within the scope of his duty, office, or employment as a law-enforcement officer. Finding that State presented sufficient evidence to support the jury’s finding, we affirm.
FACTS
¶ 3. For purposes of certiorari review, we' adopt the following facts from the Court of Appeals’ opinion.
*696 [Deputy] Cox is a deputy with the Hinds County Sheriffs Department. During the summer of 2011, with his sheriffs approval, he moonlighted as a security guard at a Hinds County restaurant, Reed Pierce’s, on Friday .and Saturday nights.
Bates was a patron one of those late weekend nights. On that night, last call had come and gone, and the wait staff was hanging around to divide up tips. Bates hung around too, talking to some of the staff and their friends. But because the manager did not know Bates, the manager told Deputy Cox to ask Bates to leave.
Bates took exception to Deputy Cox’s request, pointing out that other people were still at the restaurant. Even when Deputy Cox explained that those others could stay because they were either staff or friends of the manager, Bates refused to leave. Bates shouted at Deputy Cox, taunting him that only his uniform protected him from a beating at Bates’s hands. Bates also bragged that he would work his connections with the Hinds County Sheriffs Department to get Deputy Cox fired. Only after two more security guards stepped in did Bates succumb to being escorted out of the restaurant. Concerned that Bates may be up to something, Deputy Cox and the two other guards followed Bates into the parking lot.
Outside, Bates kept threatening to beat up Deputy Cox and ruin his law enforcement career. When Bates finally started walking towards his truck, Deputy Cox and the two guards held their position, keeping an eye on Bates. Instead of driving out of the parking lot, Bates drove towards Deputy Cox and the two other guards. He made a sharp turn so that his truck was broadside to them. He fired his gun, and then sped off.
Deputy Cox jumped into his marked vehicle and radioed that he was in pursuit of a man that had shot at him. He followed Bates to a nearby house. When more deputies arrived, they arrested Bates. In his truck, they found a .38 revolver and a spent shell casing.
Bates was charged with aggravated assault on a law enforcement officer. See Miss.Code Ann. § 97-3-7(2). During trial, after the court denied his motion for a directed verdict, Bates testified in his own defense. He admitted his gun went off in the parking lot but claimed it had been triggered by accident. At the end of trial, the State requested and was granted an instruction on the lesser-included offense of simple assault on a law enforcement officer. See Miss.Code Ann. § 97-3-7(1). Given the options of finding Bates guilty of aggravated assault on a law enforcement officer, guilty of simple assault on a law enforcement officer, or not guilty, the jury found Bates guilty of simple assault on a law enforcement officer. The court sentenced Bates to serve a term of five years. See id.
Bates, 172 So.3d at 806-09, 2014 WL 3824038, at 1-2. Additional facts, as necessary, will be related in our discussion.
DISCUSSION
¶ 4. As the Court of Appeals found, the State was required to prove Bates (1) committed simple assault, (2) on a law-enforcement officer, (3) while the law-enforcement officer was “acting within the scope of his duty, office, or employment.” See Miss. Code Ann. § 97-3-7(l)(b); 14(a) (Rev. 2014). Bates argued on appeal before the Court of Appeals that Deputy Cox could not have been acting within the scope of his “employment” that night, based on the undisputed testimony that Deputy Cox *697 was being paid by Reed Pierce’s to work as a private security officer.
¶ 5. The Court of Appeals disagreed, finding first that Bates’s indictment did not say Deputy Cox had been acting “with in the scope of his employment”; rather, it alleged that Deputy Cox had been acting “within the scope of his duty and office.” Bates, 172 So.3d at 807-09, 2014 WL 3824038, at *2. The jury instructions submitted to the jury at .Bates’s trial tracked the indictment accordingly. Id.
¶ 6. Next, finding no Mississippi case directly on point, the Court of Appeals surveyed other jurisdictions and found the consensus is that a law-enforcement officer’s private employment as a security guard does not limit the officer’s authority or responsibility to act within his or her official duties. See id. at *3, 809-10, citing as follows:
S.D. v. State, 11 So.3d 401, 402 (Fla.Dist.Ct.App.2009) (“A police officer can be engaged in the lawful performance of his duties when working an off-duty job.”); State v. DeSanto, 172 N.J.Super. 27, 410 A.2d 704, 705 (1980) (“[T]he police uniform has the same significance to the public whether the wearer is technically on or off duty[, and] in such a situation];,] the municipality, and its. public expect and obtain real benefits from the police officer.”); Salt Lake City v. Christensen, 167 P.3d 496, 501 (¶ 14) (Utah Ct.App.2007) (“[W]hen a law enforcement officer responds to preserve law and order or to detect and deter crime, he is acting ‘within the scope of his authority as a peace officer,’ ... even though he may be working at another job.” (quoting Utah’s assault statute)); Davis v. Commonwealth, 44 Va. App. 562, 605 S.E.2d 790, 792 (2004) (“[T]he coincidence of the officer’s private and public duties during the encounter did not eclipse his authority and responsibility as a law enforcement officer.”); State v. Graham, 130 Wash.2d 711, 927 P.2d 227, 230 (1996) (“[P]olice officers are considered to be under a duty to respond as police officers 24 hours a day.”). Instead, “a police officer retains his or her police officer status, even while off duty in a secondary employment capacity, unless it is clear from the nature of the officer’s activities that he or she is acting exclusively in a private capacity or is engaging in his or her own private business.” State v. Wilen, 4 Neb.App. 132, 539 N.W.2d 650, 660 (1995) (emphasis added); see also State v. Phillips, 205 W.Va. 673, 520 S.E.2d 670, 681 (1999) (holding that an off-duty police officer employed as a security guard “retains his or her official police officer status even in the private employment, unless it is clear from the nature of the officer’s activities that he or she is acting in an exclusively private capacity or engaging in his or her private business”).
¶ 7. Agreeing with this view,[1] the Court of Appeals reasoned as follows:
We find this common-law principle— that an officer retains his authority to carry out his official duties, even when privately employed — to be particularly true in Mississippi, where our Legislature has found that a law enforcement officer’s employment as private security serves the public interest. Not only has the Legislature authorized certified law enforcement officers to perform private security services during off-duty hours, *698 it also has permitted these officers to wear their official uniforms and carry their official weapons while privately employed — so long as the chief or sheriff has approved the private employment, based on a determination that the employment would serve the public interest. Miss.Code Ann. § 17-25-11 (Rev. 2012). While section 17-25-11 requires the private employer to assume any civil liability connected to the officer’s act or omissions, the statute does not strip the officer of his authority to carry out his official duties, if necessary. Instead, the statute does the opposite by literally clothing the officer with the public symbols of his law enforcement authority-his official uniform and firearm. Cf. Cagle v. State, 536 So.2d 3, 6 (Miss.1988) (holding a municipal fireman responding to a car wreck was “acting within the scope of his duty” for purposes of the assault statute, based on a statute that “clothes fire departments, its personnel and equipment, with authority to travel beyond municipal boundaries to aid in the rescue of persons with or without the occurrence of a fire”); see also Wilen, 539 N.W.2d at 660 (holding that an uniformed officer “at the restaurant conveyed to the patrons the presence of law enforcement,” creating a knowledge and expectation that the officer would act officially, if necessary); DeSanto, 410 A.2d at 705 (finding that “the police uniform has the same significance to the public whether the wearer is technically on or off duty”).
Bates, 172 So.3d at 809-10, 2014 WL 3824038, at *3.
¶ 8. We agree with the Court of Appeals. The State presented evidence that, while working as a private security guard, Deputy Cox was in full uniform and working at the private establishment with the approval of his sheriff. Miss.Code Ann. § 17-25-11 (Rev.2010). “While Deputy Cox’s initial request that Bates leave was on behalf of Reed Pierce’s, Bates’s hostile reaction triggered Deputy Cox to switch into law-enforcement mode.” Id. at *4,-(citing Christensen, 167 P.3d at 500-01 (holding that evidence supported a conviction of simple assault on a law-enforcement officer because when the defendant became belligerent, the officer’s role shifted from private security guard to peace officer); Phillips, 520 S.E.2d at 674 (affirming conviction of assault on an off-duty officer who worked as a private security guard for Walmart and who had been called over to deal with a belligerent customer)). Deputy Cox testified that at one point Bates went into a “fight[ing] stance” and “was acting like he wanted to fight at that time.” “Concerned that Bates would do something to violate the peace or endanger someone, Deputy Cox followed Bates outside.” Bates, 172 So.3d at 810-11, 2014 WL 3824038, at *4. Deputy Cox testified that, “at that point, his services for Reed Pierce’s had ended[,] [and he] was now acting as a sheriffs deputy.” Id. Once outside, Bates repeatedly threatened to beat up Deputy Cox and ruin his law-enforcement career. Deputy Cox testified that he was concerned that Bates was going to try and fight him. And Deputy Cox contemplated arresting Bates at that time. Because of recent medical issues, Deputy Cox said that he did not think he physically would have been able to handle Bates if Bates had tried to fight. Deputy Cox decided not to arrest Bates because Bates finally started walking toward his truck. As Bates did so, he turned to Deputy Cox and continued making threats, such as “I’m going to get you. You wait, I’m going to get you.” Bates got into his truck and drove toward Deputy Cox and the two bouncers. Bates made a sharp turn so that his truck was alongside them. Bates fired his gun and sped off. Deputy *699 Cox immediately ducked when he heard the shot. Deputy Cox testified about how he felt during the incident: “It was just— a gun being shot after an argument and someone threatening me, it — it scared me ... I felt like he was trying to shoot at me.”
¶ 9. Like other jurisdictions, Mississippi permits certified law-enforcement officers to wear their official uniforms while in the performance of private security services in off-duty hours if the private-security endeavor is properly authorized and serves the public interest. Miss.Code Ann. § 17-25-11. Georgia allows the same, and in speaking to a case very similar to the one before us, the Georgia Court of Appeals explained as follows:
The practice of municipalities which allows law enforcement officers to serve, while off duty and in uniform, as peacekeepers in private establishments open to the general public is in the public interest. The presence of uniformed officers in places susceptible to breaches of the peace deters unlawful acts and conduct by patrons in those places. The public knows the uniform and the badge stand for the authority of the government. The public generally knows that law enforcement officers have the duty to serve and protect them at all times. A holding that law enforcement officers have no official duty to maintain the peace under these circumstances would be in contravention of th[is] policy_
Duncan v. State, 163 Ga.App. 148, 294 S.E.2d 365, 366-67 (1982).
¶ 10. We agree with the Georgia Court of Appeals. Section 17-25-11 likewise seeks to help protect the peace and safety of the public, by allowing law-enforcement personnel to serve while off-duty and in uniform as peace-keepers in private establishments open to the general public.
¶ 11. Showing indifference to this aim, as well as contempt for Deputy Cox and his uniform, Bates became disorderly, repeatedly threatened physical violence against Deputy Cox, and then fired his gun. This conduct is exactly what the Legislature had in mind with the enactment of Mississippi Code Section 97-3-7(l)(b) (enhancing penalty when the victim is a law-enforcement officer or other enumerated protected class).
¶ 12. “Deputy Cox’s off-duty work as a private security guard did not restrict his ability to act within the scope of his duties as a law enforcement officer.” Bates v. State, 172 So.3d at 810-11, 2014 WL 3824038, at *4. This, as the Court of Appeals rightly opined, “does not mean that every action Deputy Cox performed for his private employer fell within the scope of his duties as a law enforcement officer.” Id. “But neither does it mean-as Bates tries to argue-that none of Deputy Cox’s actions could have fallen within the scope of his official duties.” Id. Bates clearly .was aware that Deputy Cox was a police officer, and the evidence presented sufficiently supports the jury’s finding that Deputy Cox was acting within the scope of his duty as a law-enforcement officer when Bates assaulted him.
¶ 13. The dissent contends that our mention of the fact that Bates was aware that Deputy Cox was a police officer is misplaced, because, one: “knowledge by the defendant that the victim is a law-enforcement officers is not an element of the statute and has no bearing whatsoever on whether the officer is acting within the scope of his office or duty[;]” and, two: if knowledge were an element of the crime, “it would make it difficult to ever achieve a conviction for the assault of an undercover law-enforcement officer.” See Dis. Op. ¶ 43 and n. 9.
*700 ¶ 14. We point out the ease of Dotson v. State, 358 So.2d 1321 (Miss.1978), where this Court addressed the issue of whether, to sustain a conviction for simple assault on a law enforcement officer, it is necessary for the accused to have knowledge that the individual assaulted was a police officer. In Dotson, two police officers had a warrant to search Frederick Dotson’s vehicle. Id. at 1321. One of the officers approached Dotson’s car while it was stopped at a red light, walked up to Dotson’s open window and shouted, “Dotson, freeze police.” Id. The officer was wearing nothing that would identify him as a police officer. Id. Dotson pointed a gun at the plain-clothes officer and drove off at a high rate of speed. Id. A jury later found Dotson guilty of simple assault on a police officer. Id. This Court reversed Dotson’s conviction on appeal and remanded for the jury to determine whether Dotson knew that the victim was a police officer. Id. at 1323.
¶ 15. The Dotson Court reasoned as follows: “The crucial question, which has not been previously decided in this state, is whether or not under the circumstances and facts hereinabove related, the court should have submitted to the jury the question of whether or not appellant knew Livingston to be a police officer acting in the line of duty.” Id. at 1321. The Dotson Court noted that Section 97-3-7(1) does not set forth that the accused must know the person assaulted to be a law-enforcement officer. Id. The Dotson Court then noted that federal courts have construed 18 U.S.C. § 111 (which makes it a violation to assault a federal officer) to mean that, generally, knowledge (scienter) is not necessary. Id. But, “if the officer stands in the position of an aggressor or of a private individual committing a tort, and his identity is not known to the accused, then the accused has the right to use such force as may be necessary to protect himself from such assault or tort and that, in such a situation, the government must prove the defendant knew the person assaulted by him to be a police officer.” Id. Dotson related the following from the Seventh Circuit Court of Appeals:
“In short, then, where a defendant charged with violating [§ ] 111 claims that he was unaware that the victim was a federal officer, the question becomes: would the defendant have been justified, because of the agent’s actions, in using force against the agent had the latter, in fact, been a ‘civilian.’ If the defendant made an honest mistake of fact with respect to the agent’s status and the defendant’s use of force would have been justified against a private citizen, then he cannot be held criminally liable under [§ ] 111. For to hold him liable would create a situation ‘where legitimate conduct becomes unlawful solely because of the identity of the individual or agency affected.’ [United States v. Feola] 420 U.S. [671] at 685, 95 S.Ct. [1255] at 1264 [ (1975) ]. If, on the other hand, the defendant would not have been justified in using force against a private citizen or if the defendant used more force than the law permitted, see United States v. Perkins, supra (428 [488] F.2d 652 (1st Cir.1973), cert. den. 417 U.S. 913, 94 S.Ct. 2612, 41 L.Ed.2d 217 (1974)), his mistake as to the agent’s status would be no defense to an action under [Section] 111.”
Dotson, 358 So.2d at 1322-23 (quoting United States v. Hillsman, 522 F.2d 454, 460 (7th Cir.1975), cert. den., 423 U.S. 1035, 96 S.Ct. 570, 46 L.Ed. 410 (1975)).
¶ 16. Speaking to Mississippi law, the Dotson Court said:
When there is no doubt of the defendant’s unlawful intention, knowledge of the official capacity of the victim is in *701 variably unnecessary; the assailant takes his victim as he finds him. But if the defendant asserts a lack of intention or wilfulness based upon ignorance of the identity of the victim and ignorance of the victim’s official privilege to interfere with the defendant’s person or freedom of movement, the jury must be allowed to consider the defendant’s evidence tending to show that he was ignorant of the official capacity of the victim. For only then can the jury give fair consideration to whether the assault was an intentional act wilfully done without legal excuse.
Id. at 1323 (citation and quotations omitted). Applying Mississippi law to the facts and circumstances of the case, the Dotson Court reasoned that it was understandable that the defendant “reasonably could have assumed that the individual was some person unconnected with the police department, who may have been attempting to do him some bodily harm[;][t]his at a time when appellant was seated in his automobile awaiting change of red light and apparently not violating any law.” Id. Accordingly, the Dotson Court held that, “under the facts of this case, the issue of whether appellant knew, or reasonably should have known, that Livingston was a police officer should have been submitted to the jury.” Id.
¶ 17. The case before us is distinguishable from Dotson in that, here, there was no question for the jury to decide as to whether Bates knew or should have known that Cox was a law-enforcement officer. Considering what happened in this case in the light most favorable to the State, no doubt existed as to Bates’s unlawful intention — that being Bates’s attempt by physical menace to put Deputy Cox in fear of imminent serious bodily harm.
¶ 18. We point out Dotson to quell any concerns that our relation of the fact that Bates knew Officer Cox was a police officer might somehow in the future make it more difficult to secure a conviction of an assault against undercover officers, plainclothes officers, or any other officers or officials not readily identifiable by a uniform. By pointing out that Bates knew Officer Cox was a police officer, we are in no way adding a new element to the statute. Rather, we are impressing upon the Legislature’s intent behind both Section 97-3-7(1) and Section 17-25-11, and the Court of Appeals having correctly construed the two sections in pari materia.
¶ 19. That Deputy Cox was in full uniform was a factor for the jury to take into consideration on the question of whether Deputy Cox was acting within the scope of his duty as a law-enforcement officer when Bates assaulted him. For our purposes, however, in speaking to and construing Mississippi law, we, as did the Court of Appeals, recognize that one of the clear objectives of Section 97-3-7(1) is to protect law-enforcement officers. As the facts of this case illustrate, Bates took offense to Deputy Cox being in uniform, and Bates’s hostility escalated because of it-a circumstance that lie's in direct contravention of the intent behind Section 17-25-11. This convinces us even more that the Legislature intended broadly to prohibit harm or threats thereof to law-enforcement officials.-
CONCLUSION
¶ 20. For these reasons, we affirm the judgment of the Court of Appeals as well as the trial court’s judgment of conviction of simple assault on a law-enforcement officer.
¶ 21. THE JUDGMENTS OF THE COURT OF APPEALS AND THE HINDS COUNTY CIRCUIT COURT ARE AFFIRMED. CONVICTION OF SIMPLE ASSAULT ON A LAW EN *702 FORCEMENT OFFICER AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. APPELLANT IS GIVEN CREDIT FOR TIME SERVED.
WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR,. CHANDLER AND COLEMAN, JJ., CONCUR. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, J.

. "Under the common law, a police officer on 'off-duty' status is 'not relieved of the obligation as an officer to preserve the public peace and to protect the lives and property of the citizens of the public in general.’ " Graham, 927 P.2d at 230 (quoting 16A Eugene McQuillin, The Law of Municipal Corporations § 45.15, at 123 (3d rev. ed.1992)).